THE STATE, EX REL. GILLIGAN, GOVERNOR, ET AL., *v.* HODDINOTT, JUDGE.

128

[redacted]

(No. 73-681—Decided December 5, 1973.)

*Mr. William J. Brown,* attorney general, *Messrs. Dunbar, Kienzle & Murphey, Mr. David P. Hiller* and *Mr. David J. Young,* for relators.

*Mr. James R. Scott,* prosecuting attorney, for respondent.

CELEBREZZE, J. Mention of the writ of prohibition first appeared in the Ohio Constitution in 1912 and is found in Section 2, Article IV. Since it was not defined by the General Assembly, or in the Constitution, it has developed according to common-law principles.

In the case of *In re Rice* (1894), 155 U. S. 396, the Supreme Court of the United States set out the requirements for granting the writ:

"Where it appears that the court whose action is sought to be prohibited has clearly no jurisdiction of the cause originally, or of some collateral matter arising therein, a party who has objected to the jurisdiction at the outset and has no other remedy is entitled to a writ of prohibition as a matter of right. But where there is another legal remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful, or depends on facts which are not made matter of record * * * the granting * * * of the writ is discretionary."

In *State, ex rel. Nolan*, v. *ClenDening* (1915), 93 Ohio St. 264, the court made clear that the writ of prohibition applies to the exercise of judicial or quasi-judicial power, where the exercise of the power was unauthorized by law, and where the exercise of such power would cause injury for which no other adequate remedy exists. These *ClenDening* requirements still retain substantial vitality in Ohio. See, generally, 63 American Jurisprudence 2d 225, Prohibition; 44 Ohio Jurisprudence 2d 169, Prohibition.

It is clear that a judge who decides to issue an order finding a person in contempt is exercising judicial power. The first requirement in *ClenDening, supra*, is met in this cause since Judge Hoddinott informed counsel for Governor Gilligan that he had decided to find the Governor in civil contempt.

It is equally clear that a Court of Common Pleas is a court of general jurisdiction, having the power to enforce its lawful orders by way of proceedings in contempt. Respondent argues, therefore, that since he clearly had the power to issue a preliminary injunction, and to enforce that

injunction, he had jurisdiction over the cause before him; that, therefore, prohibition will not lie. Respondent cites *State, ex rel. Rhodes*, v. *Solether* (1955), 162 Ohio St. 559; *State, ex rel. Mansfield Telephone Co.*, v. *Mayer* (1966), 5 Ohio St. 2d 222; *State, ex rel. Toledo Shore Line Rd. Co.*, v. *Court of Common Pleas* (1967), 11 Ohio St. 2d 193.[1]

This court has no quarrel with the principles adopted in the above cases. However, the question which must be determined is whether the Court of Common Pleas, through its preliminary injunction, had the authority and the jurisdiction to interfere with the Governor in the performance of executive acts which were dependent upon his judgment or discretion.

In *State, ex rel. Armstrong*, v. *Davey* (1935), 130 Ohio St. 160, 163, wherein the Governor had discretion in setting the date for a special election, the court stated:

"'* * * No executive act dependent upon the judgment or discretion of the Governor is subject to judicial control, and mandamus will not lie unless there has been a clear abuse of discretion.

"'Before the judiciary will interfere in such a case, it must clearly appear that such officer has so far departed from the line of his duty under the law that it can be said he has in fact so far abused such discretion that he has neglected or refused to exercise any discretion.' 38 Corpus Juris, 660, Section 199."

The Governor had before him evidence which reasonably established that an inflammatory situation existed which could lead to injury to persons and property in the area of Burr Oak State Park. The Governor has the duty to protect the citizens of the state and state property from harm. He took discretionary executive action to close Burr Oak State Park because he had determined that the situation warranted such action. In the circumstances before us,

---

[1]Respondent argues that the Common Pleas Court must make the initial determination of jurisdiction. We agree, but that determination was made when the judge orally told counsel for relators that he was going to hold them in contempt.

we do not find a clear abuse of discretion. Therefore, the Court of Common Pleas exceeded its jurisdiction when the decision was made to hold the Governor in contempt.

This holding should not be read as an affirmation of extraordinary powers in the Governor. Rather, our decision involves a comparison of competing interests. The Governor's exercise of discretion was aimed at protecting state citizens and state property from harm. That interest far outweighs the interest which Ohio Inns has in protecting its contract rights.

Respondent also argues that, even though the other requirements for granting prohibition may be met, appellate review of a finding of contempt would be an adequate remedy in the ordinary course of the law. However, in *State, ex rel. Tempero,* v. *Colopy* (1962), 173 Ohio St. 122, this court upheld the issuance of a writ of prohibition by the Court of Appeals, even though an adequate remedy was available:

"This court in the exercise of its discretion will usually refuse to allow a writ of prohibition or of mandamus where the relator has an adequate remedy in the ordinary course of the law. However, it has the power to, and may in the exercise of its discretion, issue such a writ in such an instance."

There are times when the exercise of sound discretion in the performance of executive acts represents the highest calling of a chief executive officer.[2] Absent a clear showing of abuse of that discretion, the judicial branch of government must refrain from interfering in that exercise.

For the foregoing reasons, the writ of prohibition is allowed.

*Writ allowed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and W. BROWN, JJ., concur.

P. BROWN, J., dissents.

---

[2]See *United States* v. *Chalk* (C. A. 4, 1971), 441 F. 2d 1277; *Bright* v. *Nunn* (C. A. 6, 1971), 448 F. 2d 245; *Krause* v. *Rhodes* (C. A. 6, 1972), 471 F. 2d 430.

CORRIGAN, J., concurring. I am in agreement with the judgment of the majority allowing the writ of prohibition, but, in my view, an additional important reason exists for that conclusion.

The three branches of our state government, the executive, the legislative and the judicial, are coordinate. No one of the three is subordinate to the other. Each derives its authority from the Ohio Constitution.

The Governor is vested with the supreme executive power of this state. He is required by the Constitution to see that the laws are faithfully executed.

The judicial branch does not have the power or authority to control or to infringe upon the executive power of the Governor within the area of authority alloted to him by the Constitution to exercise his judgment and discretion.

The Governor's executive order closing Burr Oak State Park lodge and cabin facilities was made after an investigation and reports by local and state law enforcement agencies convinced him that the health, safety and general welfare of the public attempting to use those facilities were seriously threatened as a result of a labor-management dispute, and that the additional use of state and local enforcement or military officers would not guarantee the health, safety and general welfare of the public but would only aggravate the situation. The Governor, in his executive order, determined that an emergency existed.

The Governor of Ohio was not a party to the lawsuit in the Common Pleas Court of Guernsey County, wherein the judge, after a hearing, announced that he had decided to find the Governor to be in civil contempt for violation of the court's injunctive order. A copy of the proposed journal entry drawn by the judge is appended to the stipulation of facts in this case. It finds the Governor to be in contempt and orders that he purge himself of contempt by rescinding the executive order of August 3, 1973, and some accompanying rules and an order of the Department of Natural Resources.

The issuance and filing of this executive order with the

Secretary of State by the Governor of Ohio was done in the performance of his constitutional duties as Governor to maintain law and order and to prevent civil disorder. By such official act he is not amenable to the jurisdiction of the Court of Common Pleas of Guernsey County in a proceeding for contempt arising out of a civil lawsuit. The Court of Common Pleas usurped its jurisdiction in seeking to interfere with the exercise of the supreme executive power of the Governor of Ohio, granted by the Ohio Constitution. Prohibition is the appropriate and necessary remedy, under the factual situation here, to stop such invasion of executive authority. Of course, the writ of prohibition should issue.

PAUL W. BROWN, J., dissenting. The brief in support of the writ of prohibition does not assert as a proposition of law that the Court of Common Pleas was without jurisdiction in this matter. The assertion by the relators is that the Ohio Supreme Court has the discretion to prohibit the exercise of judicial power by an inferior court in an area which impinges upon the exercise of the executive power.

It is claimed that the violence flowing from the labor dispute at Burr Oak State Park had escalated to a point where the Governor had only two choices. He could close the park, or he could call in the militia, and that at that time the exercise of the judicial power impinged upon the exercise of the executive power so as to become an improper judicial usurpation of power, requiring this court to issue the writ of prohibition.

As I view that claim, it is that at some point the Governor had the power not only to quell the civil disorder and labor violence but also to close the park, and thus effectively to usurp the power of the Court of Common Pleas to deal with the subject matter of the litigation before it, to which the Director of the Department of Natural Resources was a party.

*State, ex rel. Tempero,* v. *Colopy* (1962), 173 Ohio St. 122, is argued as authority for that proposition. I do not find it helpful, for it is a case in which the court admittedly

had not acquired jurisdiction over the person of the defendant. The decision turned upon the adequacy of appellate review to correct the error.

*State, ex rel. Lambdin,* v. *Brenton* (1970), 21 Ohio St. 2d 21, also cited by the relators, adds little, for it too represents only an instance in which this court granted the writ of prohibition because it conceived appellate review to be inadequate to correct an erroneous interlocutory order of the trial court. The bare assertion in that case, without citation of legal authority, that the erroneous order amounted to ''usurpation of judicial power'' is not persuasive. Nor is the case in point on the proposition argued relative to executive-judicial confrontations.

*State, ex rel. Ohio High School Athletic Assn.,* v. *Judges* (1962), 173 Ohio St. 239, also cited, is another example of discretionary issuance of the writ of prohibition in a case in which this court conceived appellate review of a trial court error to be an inadequate remedy.

None of the above cases bears upon the question, as posed in the relators' brief in the following language: ''Can a Common Pleas Court consistent with the separation of powers doctrine, attempt to control the discretion vested in the Governor in selecting the most appropriate response to civil disorder upon state property?''

Counsel for respondent characterizes this argument as an affirmative defense, and accuses the relators of attempting to elevate it to the status of a jurisdictional defect. I agree with both the characterization and the accusation.

I conclude that the trial court clearly had jurisdiction to inquire into the facts, argued in defense of the Governor's violation of the trial court's order. I deem it unwise to arrive at a conclusion of the validity of that defense on the record before us. It should be noted that the Governor's order, supported by our writ, terminates the trial court's jurisdiction to hear Ohio Inns' complaint bearing upon its right to continue to operate the park facility under its contract with the Department of Natural Resources. It should also be noted that this result continues, notwithstanding that

136

the violence which was the sole basis for the executive intervention has ceased.

The executive order, supported by our writ, effectively closes the courts to Ohio Inns, thus violating Section 16 of Article I of the Ohio Constitution and the 14th Amendment to the United States Constitution.

Cited cases in which discretionary writs of prohibition have issued to prevent court orders enjoining the use of force by the Governor to quell civil disturbances do not bear upon Governor Gilligan's conduct in this case.

Chief Justice Hughes of the United States Supreme Court, in *Sterling* v. *Constantin* (1932), 287 U. S. 378, clearly stated that the Constitution limits executive power which attempts to subvert private rights and the jurisdiction of the courts under claim of exigency and civil disorder.

The facts of this case, as demonstrated by the record, require further exploration to determine whether the Governor's actions were justified or were a contemptuous executive usurpation of judicial authority. This should be done by the trial court. The writ should be denied.