**In re DUNN.**

[Cite as *In re Dunn* (1995), 101 Ohio App.3d 1.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA94–03–007.

Decided Feb. 6, 1995.

*Peelle Law Offices Co., L.P.A.,* and *Robert C. Peelle,* for appellee.

*John C. Bryan,* for appellant.

WALSH, Judge.

Petitioner-appellant, Gary P. Dunn, appeals a decision of the Clinton County Court of Common Pleas finding that a written agreement executed by appellant and petitioner-appellee, Cathy D. Dunn (Wead), in 1983, which modified their separation agreement with regard to the parties' child, was an enforceable contract.

The parties entered into a separation agreement and obtained a dissolution of their marriage in the trial court on November 14, 1975. The separation agreement, which was incorporated in the dissolution decree, provided for, among other things, the care and support of the parties' then minor child. On January 19, 1983, the parties executed a document entitled "Amendment to Separation Agreement." This document was prepared by appellee, a legal secretary. The document, which was never submitted to or approved by the trial court, contained four provisions: (1) appellee granted appellant the right to claim the child as an income tax exemption; (2) appellant agreed to pay all medical, dental, and optical expenses of the child; (3) appellant agreed to continue to pay $25 per week for child support until the child was eighteen years old or as long as she attended high school; and (4) both parties agreed to each pay one-half of the child's expenses for attending "a college, graduate, technical or vocational school, or any school of higher learning * * *." The parties followed this agreement for several years, with some modification by agreement,[1] until appellant refused to pay one-half of the child's college expenses.

On July 30, 1992, appellee filed a motion to enforce the "amendment" to the separation agreement. The parties agreed, and the trial court orally consented, that a domestic relations court referee would hear the motion. The referee's

---

1. By agreed entry dated and filed on August 6, 1988, the parties agreed to increase appellant's child support obligation to $50 per week.

report was filed on February 9, 1993. In her report, the referee stated that "[b]oth parties agreed to waive any problems with the extent of the Referee's authority and requested the Referee to take testimony on the question of whether the Amendment to Separation Agreement was an enforceable contract." The referee recommended that the trial court overrule appellee's motion because the amendment was not an enforceable contract. Appellee filed objections to the referee's report. On February 9, 1994, the trial court overruled the referee's recommendations, finding that the parties' January 19, 1983 agreement ("1983 agreement") was a valid and enforceable contract. The trial court also ordered appellant to pay one-half of the child's college expenses.

Appellant timely filed this appeal and raises the following assignments of error:

Assignment of Error No. 1:

"The trial court's ruling of February 9, 1994 that the parties had a valid contract is against the weight of the evidence and contrary to law."

Assignment of Error No. 2:

"The trial court's ruling that the terms of the agreement were clear and unambiguous is contrary to law and against the manifest weight of the evidence."

Assignment of Error No. 3:

"The trial court's ruling that the college education provisions of 1983 were and are enforceable in 1994 is against the weight of evidence and contrary to law."

Assignment of Error No. 4:

"The referee's report and recommendation should be *affirmed,* reinstated *in toto,* and the trial court's decision reversed as a matter of law."

Before we reach the merits of appellant's first assignment of error, we must decide whether the trial court had jurisdiction to rule that the parties' 1983 agreement, which had never been submitted to or approved by the court, was a valid contract enforceable by the court.

It is well established that courts of common pleas "may exercise only such jurisdiction as is expressly granted to them by the legislature." *Seventh Urban, Inc. v. Univ. Circle* (1981), 67 Ohio St.2d 19, 22, 21 O.O.3d 12, 14, 423 N.E.2d 1070, 1073. R.C. 2305.01 provides for the general jurisdiction of courts of common pleas and states that:

"The court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts and appellate jurisdiction from the decisions of boards of county commissioners."

Both Section 3, Article III of the Ohio Constitution and R.C. 2305.01 provide for the general equitable jurisdiction of courts of common pleas.

With regard to domestic relations matters, R.C. 3105.011 states that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. * * * "

 Although there is no provision of law which specifically requires all other civil cases to be brought within or assigned to the general division of the common pleas court, it may reasonably be concluded that when a case is not primarily of a domestic relations nature, it should be originally brought in the general division, or assigned to a judge thereof.

In *Levy v. Levy* (May 2, 1978), Franklin App. No. 77AP–918, unreported, the Franklin County Court of Appeals held that a judge of the division of domestic relations did not err when he determined that he would decline jurisdiction over an action sounding in contract brought by the plaintiff against her former husband and his corporation in which the plaintiff claimed monies due her. The court of appeals stated that the plaintiff may well have stated a claim for relief against the defendant, but that it was not a claim involving a domestic relations matter and, therefore, should not have been brought in the division of domestic relations.

 In the case at bar, two of the provisions of the subject matter of the controversy had, in one form or another, previously been before the trial court. Appellant's obligations to pay child support and the child's medical expenses were set forth in the separation agreement which was incorporated in the dissolution decree. In addition, by agreed entry dated August 10, 1988, the parties had agreed to increase appellant's child support obligation to $50 per week. On the other hand, the other two provisions of the parties' 1983 agreement have never been before the trial court and were not included in the parties' separation agreement.

Appellee sought to enforce by way of motion the parties' 1983 agreement. It appears clearly that the subject matter jurisdiction of this action lies with the domestic relations court, in that such court had initially approved the separation agreement and has the continuing jurisdiction to enforce its order of dissolution pursuant to R.C. 3105.65(B). We think the fact that appellee brought an action sounding in contract does not divest the domestic relations court of its general power to grant complete relief in a matter which is primarily a domestic relations matter. See *Wareham v. Wareham* (Dec. 14, 1978), Franklin App. No. 78AP–118, unreported. We therefore find that the trial court had jurisdiction to rule on the validity and enforceability of the parties' 1983 agreement.

We now turn to the merits of appellant's first assignment of error. In this assignment, appellant argues that the trial court's finding that the parties had a valid and enforceable contract is against the weight of the evidence. Appellant argues that appellee failed to substantially perform the terms of their agreement by claiming the child as a tax exemption beginning in 1989 and seeking an increase in child support in 1988, and that therefore appellee had breached the agreement.

It is well established that when a judgment is supported by some competent, credible evidence going to the essential elements of the case, that judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Moreover, in reviewing a trial court's decision, an appellate court must give due deference to the trial court's findings as the trial judge is best able to observe the witnesses and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.[2]

In its February 9, 1994 judgment entry, the trial court made the following findings of fact:

"The Court finds from the evidence that on January 19, 1983 * * * the parties entered into this Agreement; that there was a meeting of minds; that both petitioners were in agreement with it's [*sic*] provisions at the time of execution, as that the consideration was the mutual exchange of promises. For these reasons the Court finds this to be a valid contract as of the time of it's [*sic*] execution.

" * * *

"With regard to the increase in child support the Court finds that the original child support order dated October 1, 1975 called for a payment of $25.00 per week as long as legally required. The 'Amendment to Separation Agreement' simply required that he continue to pay child support at the rate of $25.00 per week until such time as said child attained the age of 18 years and graduated for [*sic*] high school. There was *no agreement* that the Petitioner Wead [appellee] would not seek an increase in child support. The Court finds, however, that if there had been such an agreement, the modification of child support in 1988 would still not constitute a breach because the parties agreed to it.

---

2. The foregoing standard of review will apply to appellant's second and third assignments of error as they both state that the trial court's ruling that the college education provisions of 1983 were clear and unambiguous and are enforceable in 1994 is against the weight of the evidence.

"With regard to the claiming of the tax exemption, the record was clear that this occurred for the year 1989; that the parties had a discussion concerning this in 1988; that his [appellant's] attorney was aware of this provision in the 1983 agreement; that Petitioner Wead began claiming the exemption in 1989 and that Dunn [appellant] did not thereafter claim the child as an exemption. A discussion took place concerning the tax exemption * * * and thereafter Mr. Dunn did not claim the child. No objection was made at the time. It is clear to the Court that Petitioner Dunn acquiesced with regard to this change as well." (Emphasis *sic.*)

A review of the record reveals that some competent, credible evidence supports the foregoing findings and the trial court's judgment. While the record shows that appellee began claiming the child as a tax exemption in 1988 or 1989 and sought an increase in child support in 1988 by way of motion, the record also shows that appellant failed to object. Appellant in effect waived his right to enforce the performance of those particular provisions of the parties' 1983 agreement and acquiesced in appellee's change of those provisions. We accordingly find that the trial court's determination that the parties' 1983 agreement was a valid and enforceable contract is not against the weight of the evidence. Appellant's first assignment of error is overruled.

Because appellant's second and third assignments of error concern the fourth provision of the parties' 1983 agreement and because appellant addresses the third and fourth assignments of error together, we will consider the second, third, and fourth assignments of error together.

Appellant's second, third, and fourth assignments of error essentially concern the college education provision of the parties' 1983 agreement. Appellant first argues that the terms of that provision were vague and "blatantly ambiguous as to duration, amount of money and location of the school."

The college education provision reads as follows:

"Both parties agree that if and when the said child wishes to enter a college, graduate, technical or vocational school, or any school of higher learning, the Husband agrees to pay ½ of said expense for the said schooling and the wife shall pay ½ of the said expense for said schooling."

A contract is binding and enforceable if it encompasses the essential terms of the parties' agreement. *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 620, 622 N.E.2d 1093, 1097. While the provision does not specify the duration or the amount of each party's obligation or the location of the school, such does not make the provision vague or ambiguous. The provision clearly requires both parties to share equally in the college expenses of their child. It is well established in Ohio

that when the terms of a contract are clear and unambiguous, courts cannot find an intent different from the one expressed in the contract. See *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 9–10, 24 OBR 5, 7–8, 492 N.E.2d 441, 444–445. In addition, when a contract is plain and unambiguous, it does not become ambiguous by reason of the fact that its operation may work hardship upon one of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922. We accordingly conclude that the trial court properly found that the terms were both clear and unambiguous.

Appellant next argues that the trial court's ruling that the college education provision was enforceable was against the weight of the evidence and contrary to law and that as a result, the referee's report and recommendations should be affirmed and reinstated "in toto."

■ We note at the outset that Civ.R. 53(E)(5) requires a trial court to make its own factual determinations by undertaking an independent analysis of the issues before adopting a referee's report. A trial court should not adopt findings of a referee that have been challenged unless the trial court fully agrees with those findings after weighing the evidence itself and fully substituting its judgment for that of the referee. *DeSantis v. Soller* (1990), 70 Ohio App.3d 226, 232, 590 N.E.2d 886, 890.

■ In *Nin v. Nin* (Jan. 31, 1994), Butler App. Nos. CA93–01–018 and CA93–03–034, unreported, 1994 WL 29880, we held that a court is without jurisdiction to provide for the support of or aid to an adult child. One exception to the rule occurs when the parties to a separation agreement have voluntarily agreed to provide a college education for a child, and the agreement is incorporated into the divorce decree. See *Grant v. Grant* (1977), 60 Ohio App.2d 277, 281–282, 14 O.O.3d 249, 251, 396 N.E.2d 1037, 1040. In the case at bar, while the parties' separation agreement did not provide for the child's college education, their 1983 agreement, which the trial court found to be a valid contract, did so provide. Under Ohio law, it is established that when parties make mutual promises which are thereafter integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions. *Astor v. Internatl. Business Machines Corp.* (C.A. 6, 1993), 7 F.3d 533, 539.

In its judgment entry, the trial court made the following findings of fact:

"Finally, with regard to the agreement of the parties to share equally in the cost of their daughters [*sic*] education the Court finds this to also be a valid agreement.

"The cost of raising a child and sending her through college requires guidance, care, patience, parental love, and a lot of expense. The Court understands that in most cases this places a burden on the financial resources of both parents.

Nevertheless, the parties in this case agreed in 1983 to share the cost of their child's education. The Court can find no reason that this was and is not a valid contract."

As a reviewing court, we should and do give due deference to those findings. *Seasons Coal Co., supra.* In addition, a review of the record shows that competent, credible evidence supports the trial court's judgment. We accordingly conclude that the trial court's determination that the college education provision of the parties' 1983 agreement was enforceable was not against the weight of the evidence. Appellant's second, third, and fourth assignments of error are therefore overruled.

The judgment is affirmed.

*Judgment affirmed.*

FRED E. JONES, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

A separation agreement loses its contractual nature the moment it is accepted and incorporated into the final divorce or dissolution decree. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413, paragraph four of the syllabus; *Bugay v. Bugay* (1977), 53 Ohio App.2d 285, 288, 7 O.O.3d 336, 338, 373 N.E.2d 1263, 1265. The obligations of the agreement are then imposed by decree and may be enforced in contempt. *Robrock v. Robrock* (1958), 167 Ohio St. 479, 5 O.O.2d 165, 150 N.E.2d 421, paragraph three of the syllabus; *Bugay, supra,* at 288, 7 O.O.3d at 336, 373 N.E.2d at 1265. The merger does not alter the fundamental nature of the agreement. For example, children still retain rights under the agreement as third-party beneficiaries. However, the merger affects the enforcement of the agreement and the ability to alter it since the parties must receive court approval to alter judicial decrees. *Wolfinger v. Ocke* (1991), 72 Ohio App.3d 193, 198, 594 N.E.2d 139, 142.

The "amendment" states that the parties intended to alter their obligations under the separation agreement, something they could not do without judicial approval. While the parties have the freedom to contract, here they are seeking to contract about obligations which arose out of their marriage. In *Robrock, supra,* 167 Ohio St. at 488, 5 O.O.2d at 170, 150 N.E.2d at 428, the Supreme Court quoted with approval from *Holloway v. Holloway* (1935), 130 Ohio St. 214, 216–217, 4 O.O. 156, 157, 198 N.E. 579, 580 an alimony case, stating that the words "seem equally appropriate to a question involving an agreement relating to minor children[:]"

"A decree granting divorce and awarding alimony is an order of court in the enforcement of which the public has a vital interest. An alimony obligor is not exempt from the operation of the decree by reason of the separation agreement. To hold otherwise would be to reduce the status of the divorce and alimony decree to that of a commercial transaction. Marriage, however, is not a matter of commerce, nor is it merely a contract between the parties. Marriage is a basic social institution of the highest type and importance, in which society at large has a vital interest.

"Where a court, in its divorce decree, adopts the language of a separation agreement, it does not thereby reduce the status of the decree to that of a mere contract. While a contract may become a decree of court, a decree of court cannot assume the status of a mere contract. The right to alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support his wife. It is the law rather than contract which imposes this obligation upon the husband." *Robrock, supra,* 167 Ohio St. at 489, 5 O.O.2d at 170, 150 N.E.2d at 429.

This court has decided cases stating that a separation agreement is a binding contract before the decree is entered and it remains enforceable even if a petition for dissolution is dismissed, provided the parties intended that it survive the dismissal. *Bourque v. Bourque* (1986), 34 Ohio App.3d 284, 518 N.E.2d 49; *Flint v. Flint* (Feb. 5, 1990), Clinton App. No. CA89–08–014, unreported, 1990 WL 8465; *Taylor v. Taylor* (Feb. 27, 1989), Madison App. No. CA88–08–019, unreported, 1989 WL 16731. These cases appear to be helpful by analogy, but after study I must conclude that they are not. These cases involve agreements before they were incorporated into a decree. Once they are incorporated into a decree, the rule that they lose their contractual nature applies. See *Bourque, supra,* 34 Ohio App.3d at 286, 518 N.E.2d at 51.

Further, even assuming this is strictly a contract case, does the domestic relations court have jurisdiction to decide the matter? The parties cannot confer subject matter jurisdiction on a court by agreement where subject matter jurisdiction is lacking. *State ex rel. Easterday v. Zieba* (1991), 58 Ohio St.3d 251, 256, 569 N.E.2d 1028, 1033, fn. 3; *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 2 O.O.3d 408, 409, 358 N.E.2d 536, 537, overruled on other grounds, *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650.

In a dissolution, the court "retains jurisdiction to modify all matters pertaining to the allocation of parental rights and responsibilities for the care of the children, to the designation of a residential parent and legal custodian of the children, to child support, and to visitation." R.C. 3105.65(B). In *Leonard v. Leonard* (Aug. 17, 1992), Butler App. No. CA91–08–143, unreported, 1992 WL

201099, the trial court held the appellant in contempt for failure to pay one-half of his son's college expenses as provided for in the parties' decree of dissolution. This court rejected appellant's argument that the trial court had no jurisdiction to order support of an emancipated child. The court concluded that the agreement to assist with college expenses was separate and apart from appellant's legal duty to pay support for his minor children. *Id.* at 5. It stated that "the present case does not involve child support at all. Rather, it involves a debt voluntarily incurred by appellant in the separation agreement." *Id.* at 6. Since the agreement to pay for college expenses is separate from the obligation to pay child support, it is arguable that the court has no jurisdiction to modify the original agreement of the parties in that respect. However, I think this argument is somewhat weak given that the child's college expenses are arguably a matter pertaining to the responsibility for the care of the child.

Jurisdiction in domestic relations matters is purely statutory. *Gibson v. Gibson* (1993), 87 Ohio App.3d 426, 431, 622 N.E.2d 425, 428; *Owens v. Owens* (1948), 85 Ohio App. 414, 415–416, 40 O.O. 264, 265, 88 N.E.2d 922, 923. R.C. 3105.011 provides that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." Even assuming that the "amendment" is an enforceable contract, if the case is simply a contract case as stated by the trial court, then it is arguably not a domestic relations matter at all. After all, the parties could contract about anything.

In *Gibson, supra*, 87 Ohio App.3d at 431, 622 N.E.2d at 428, the court held that the equity powers of the trial court in a division of property context did not confer upon the court the authority to enter a judgment for damages to a vehicle titled in the husband's name where it is neither authorized by the domestic relations statutes nor demanded by either party. See, also, *Morgan v. Morgan* (1984), 16 Ohio App.3d 136, 16 OBR 143, 474 N.E.2d 1216 (the equity powers of the trial court do not confer upon the court the authority to order a sale of the former marital residence which is neither authorized by statute nor demanded by the adverse party). Nowhere do the domestic relations statutes authorize a domestic relations court to consider purely contractual issues between parties simply because they were married at one time.

The trial court's decision should be reversed, and therefore I respectfully dissent.