LISBOA

v.

KARNER, Judge.

[Cite as *Lisboa v. Karner,* 167 Ohio App.3d 359, 2006-Ohio-3024.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86440.

Decided June 9, 2006.

360

McDonald, Hopkins, Burke & Haber Co., L.P.A., and Roger L. Kleinman, for relator.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan Jr., Assistant Prosecuting Attorney, for respondent.

DIANE KARPINSKI, Presiding Judge.

{¶ 1} The relator, Kimberly Lisboa, commenced this prohibition action against the respondent, Judge Cheryl Karner, to prohibit the judge from ruling on a fee dispute among Inglewood Associates, Inc. ("Inglewood"), the marital estate, and Kimberly Lisboa in the underlying divorce case, *Lisboa v. Lisboa*, Cuyahoga C.P. No. 03–DR–295186. Kimberly also sought an alternative writ, which this court granted and, thus, precluded Judge Karner from taking any action on the fee dispute until further order. This court added Inglewood and Jose Lisboa as respondents. After the court conducted a guidelines hearing, both the judge and Kimberly filed motions for summary judgment and briefs in opposition; Inglewood filed a brief in support of the judge's dispositive motion. For the following reasons, this court grants the relator's motion for summary judgment, denies the respondent's motion for summary judgment, and grants the writ of prohibition.

{¶ 2} On June 9, 2004, in the underlying case, Inglewood, Kimberly and Jose Lisboa, and the marital estate entered into an agreement under which Inglewood, as an independent contractor, would assist in valuing and preserving the estate, and develop a plan to operate the business successfully and to resolve serious pending threats of litigation from third parties. This agreement specified that the estate would pay Inglewood's principals $250 an hour and staff members between $150 to $250 an hour. Additionally, the estate would pay a $5,000 retainer and all reasonable out-of-pocket expenses. Inglewood agreed to use its best efforts to minimize costs. Section 4.4 of the agreement provided that Inglewood would submit daily invoices, which the estate would pay within seven days, "subject to the Marital Estate's ability to pay without jeopardizing the essential operations of the Marital Estate. Any disputes will be resolved by Judge Karner or her designee." The parties wrote this latter quoted section onto the agreement.

{¶ 3} Then the parties endeavored to incorporate this contract into a court order pursuant to an agreed journal entry, journalized June 14, 2004, which provided as follows: "This matter came on for hearing this 9th day June, 2004, and was heard before the Honorable Cheryl S. Karner, upon interim order regarding management of marital estate pursuant to letters of 5/12/04 and June 9, 2004 incorporated by reference. The court finds that the parties have resolved their differences by agreement, the terms of which are set forth above."

{¶ 4} The amount of fees soon became an issue among the parties, because Inglewood's invoices were much greater than expected. In September 2004, the court entered an agreed journal entry under which Inglewood's fees would be limited to $15,000 per month. Nevertheless, this failed to resolve the fee dispute. On November 30, 2004, Kimberly and one of the estate's businesses, the ITX Corporation, sued Inglewood in Cuyahoga C.P. No. CV–548823, for breach of contract for performing and charging for services beyond the scope of the contract, charging excessive fees, and unilaterally terminating the contract in violation of specific terms. In February 2005, Inglewood filed a motion to tax its fees as costs in the underlying domestic relations case and for additional fees. The trial judge set the matter for a hearing on June 3, 2005, and Kimberly then filed this prohibition action.

{¶ 5} The principles governing prohibition are well established. Its requisites are (1) the respondent against whom it is sought is about to exercise judicial power, (2) the exercise of such power is unauthorized by law, and (3) there is no adequate remedy at law. *State ex rel. Largent v. Fisher* (1989), 43 Ohio St.3d 160, 540 N.E.2d 239. Prohibition will not lie unless it clearly appears that the court has no jurisdiction over the cause that it is attempting to adjudicate or the court is about to exceed its jurisdiction. *State ex rel. Ellis v.*

*McCabe* (1941), 138 Ohio St. 417, 20 O.O. 544, 35 N.E.2d 571, paragraph three of the syllabus. "The writ will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." *State ex rel. Sparto v. Darke Cty. Juvenile Court* (1950), 153 Ohio St. 64, 65, 41 O.O. 133, 90 N.E.2d 598. Nevertheless, when a court is patently and unambiguously without jurisdiction to act, the availability or adequacy of a remedy is immaterial to the issuance of a writ of prohibition. *State ex rel. Tilford v. Crush* (1988), 39 Ohio St.3d 174, 529 N.E.2d 1245, and *State ex rel. Csank v. Jaffe* (1995), 107 Ohio App.3d 387, 668 N.E.2d 996. However, absent such a patent and unambiguous lack of jurisdiction, a court having general jurisdiction of the subject matter of an action has authority to determine its own jurisdiction. A party challenging the court's jurisdiction has an adequate remedy at law via appeal from the court's holding that it has jurisdiction. *State ex rel. Rootstown Local School Dist. Bd. of Edn. v. Portage Cty. Court of Common Pleas* (1997), 78 Ohio St.3d 489, 678 N.E.2d 1365, and *State ex rel. Bradford v. Trumbull Cty. Court* (1992), 64 Ohio St.3d 502, 597 N.E.2d 116. Moreover, the court has discretion in issuing the writ of prohibition. *State ex rel. Gilligan v. Hoddinott* (1973), 36 Ohio St.2d 127, 65 O.O.2d 310, 304 N.E.2d 382.

{¶ 6} R.C. 3105.011 sets forth the jurisdiction of the domestic relations division of the common pleas court: "The court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." This section limits the jurisdiction of the domestic relations division to the determination of domestic relations matters. Any collateral claims must be brought in a separate action in the appropriate court or division when the claim involves the determination of the rights of a third party. *Tanagho v. Tanagho* (Feb. 23, 1993), Franklin App. No. 92AP–1190, 1993 WL 50950, and *State ex rel. Ross v. O'Grady* (Sept. 27, 1994), Franklin App. No. 94APD03–443, 1994 WL 532056.

{¶ 7} In *In re Marriage of Steffen* (May 15, 1980), Cuyahoga App. No. 41295, 1980 WL 354967, this court ruled that creditors of parties to a domestic relations case must directly sue their debtors who fail to pay for services rendered, as compared to having the domestic relations court determine that issue. Similarly, in discussing the jurisdiction of the domestic relations court, the court of appeals held that "when a case is not primarily of a domestic relations nature, it should be originally brought in the general division." *In re Dunn* (1995), 101 Ohio App.3d 1, 5, 654 N.E.2d 1303. In *Cody Zeigler, Inc. v. Zeigler* (Nov. 3, 1998), Licking App. No. 98–CA–00054, 1998 WL 817762, the court confirmed the holding in *Dunn*: "If the matter is not primarily a domestic relations matter, then the domestic relations court does not have jurisdiction under R.C. 3105.011 * * *."

{¶ 8} Furthermore, in analogous cases the appellate courts have ruled that the domestic relations court does not have jurisdiction over contract matters between a party to the divorce and a third party, such as an independent contractor. In *Shafer v. Shafer* (June 6, 1974), Cuyahoga App. No. 33298, this court considered whether the domestic relations court erred in ordering the husband to pay his own attorney $3,000 for services rendered in a divorce action. This court ruled that the domestic relations court had no jurisdiction to issue such an order. Again, in *Seelie v. Coombs* (Oct. 9, 1997), Cuyahoga App. No. 71883, 1997 WL 626014, this court held that an attorney's contract action against his former client exceeded the jurisdiction of the domestic relations court and that the court's ruling was a nullity. Instead, the attorney's proper recourse was to adjudicate his claims for money due pursuant to his contract in a court of competent jurisdiction. See, also, *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 709 N.E.2d 208, and *Martin v. Martin* (Dec. 20, 2001), Cuyahoga App. Nos. 79219 and 79388, 2001 WL 1685587.

{¶ 9} In *Gibson v. Gibson* (1993), 87 Ohio App.3d 426, 622 N.E.2d 425, when one spouse damaged the motor vehicle of the other spouse, the domestic relations court in the divorce action awarded an $1,800 judgment in damages to the aggrieved spouse. On appeal, the court concluded that R.C. 3105.011 gave the domestic relations court the equitable power to divide property and to consider the damage done to the vehicle, but the statute did not give it the power to award damages. Thus, entering a judgment for damages was beyond the authority of the domestic relations court.

{¶ 10} In *Levy v. Levy* (May 2, 1978), Franklin App. No. 77AP–918, 1978 WL 216822, Doreen Levy had a domestic partnership with Simon Levy, and she sought an equitable division of property between them. This included considering the substantial money and valuable services she provided to Simon and his company. The Franklin County Court of Appeals ruled that such a claim could not properly be brought before the domestic relations court, because the claim was "predicated upon contract supported by valid consideration," not their cohabitation. Similarly, in *Tanagho*, the Franklin County Court of Appeals ruled that a quiet-title action was beyond the jurisdiction of the domestic relations court and must be brought in a separate action in an appropriate court or division. See, also, *McIlvaine v. McIlvaine* (Mar. 17, 1993), Summit App. No. 15773, 1993 WL 74843, in which the domestic relations court was held to have exceeded its power in ruling on a quiet-title claim and declaring a judgment lien on marital property null and void; and *Yanish v. Yanish* (Nov. 24, 1999), Cuyahoga App. No. 75305, 1999 WL 1068071, in which the domestic relations court was deemed to have properly transferred a quiet-title action on marital property to the general division of the court of common pleas.

{¶ 11} In the present case Inglewood's claim is a contract claim for services rendered in running a business. It is not a domestic relations matter. Inglewood seeks an award of money, which does not come within the domestic relations court's equitable powers. Inglewood's claim is completely analogous to those cases in which claims for attorney fees from one's own client have been held to be beyond the domestic relations court's jurisdiction.

{¶ 12} Inglewood argued in its brief to this court that the domestic relations court has jurisdiction because Kimberly and her attorney insisted on inserting into the contract the clause that Judge Karner or her designee would resolve all disputes. Thus, allowing Kimberly to escape this clause would be unfair and inequitable. However, the issue sub judice is the subject-matter jurisdiction of the domestic relations court. Subject-matter jurisdiction cannot be waived and may be raised at any time. Moreover, jurisdiction cannot be conferred by consent. *State ex rel. Wilson–Simmons v. Lake Cty. Sheriff's Dept.* (1998), 82 Ohio St.3d 37, 693 N.E.2d 789; *Newland v. Indus. Comm.* (1938), 60 Ohio App. 104, 12 O.O. 509, 19 N.E.2d 780; *State ex rel. Kline v. Carroll* (Jan. 4, 2002), Cuyahoga App. No. 79737, 2002 WL 42962. Thus, Inglewood's argument is not well founded.[1] The gravamen of Judge Karner's argument is that she is not patently and unambiguously without jurisdiction to hear the fee dispute. However, R.C. 3105.011 has been consistently interpreted as excluding collateral claims and non-domestic-relations matters from the jurisdiction of the domestic relations court. Various analogous cases have similarly held that actions such as contract claims for professional services are beyond the domestic relations court's jurisdiction. As a result of the jurisdictional limits of R.C. 3105.011, this court concludes that the domestic relations court is patently and unambiguously without jurisdiction to hear Inglewood's fee dispute. Accordingly, this court grants the writ of prohibition and prohibits the respondent court from hearing the Inglewood fee dispute in the underlying case.

Writ granted.

Rocco and McMonagle, JJ., concur.

---

1. In the underlying case Inglewood argued that its fees should be taxed as costs because it was a de facto special master. However, it cited no rule, statute, or case law for that proposition, and did not advance that theory to this court in its brief.