[Cite as *Centerburg RE, L.L.C. v. Centerburg Pointe, Inc.*, 2014-Ohio-4846.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| CENTERBURG RE, LLC | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 13 CA 28 |
| CENTERBURG POINTE, INC. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Civil Appeal from the Court of Common
                                                         Pleas, Case No. 11 OT 11-0622


JUDGMENT:                                      Affirmed


DATE OF JUDGMENT ENTRY:         October 30, 2014


APPEARANCES:

For Defendant-Appellant                    For Plaintiff-Appellee

DOUGLAS V. BARTMAN                    EZIO A. LISTATI
THE BARTMAN LAW OFFICE            J. JAREDD FLYNN
1991 Crocker Road, Suite 600            THRASHER, DINSMORE & DOLAN
Cleveland, Ohio  44145                       1400 West 6th Street, Suite 400

*Wise, J.*

**{¶1}** Appellant Centerburg Pointe, Inc. appeals from the decisions of the Knox County Court of Common Pleas denying its motion to dismiss and its motion for summary judgment and granting summary judgment in favor of Appellee Centerburg RE, LLC.

STATEMENT OF THE FACTS AND CASE

**{¶1}** James Griffiths and Martha Griffiths were married on August 22, 1992. The marriage was terminated and the final divorce decree was filed on August 25, 2011.

**{¶2}** Appellant Centerburg Pointe, Inc. and Appellee Centerburg RE, LLC are corporate entities formed and owned by James Griffiths and Martha Griffiths during their marriage. Appellant Centerburg Pointe, Inc. is an Ohio corporation wholly owned by James Griffiths ("Husband"). Appellee Centerburg RE, LLC is an Ohio limited liability company wholly owned by Martha Griffiths ("Wife").

**{¶3}** Appellant and Appellee were parties to a lease for the operation of a nursing home known as Centerburg Pointe. Appellee was the landlord and Appellant was the tenant with respect to said nursing home. The Lease, effective January 1, 2008, was executed by Ms. Griffiths as the sole member for Appellee. The Lease was also executed by Ms. Griffiths as secretary for Appellant.

**{¶4}** Pursuant to §2.04(a) of the Lease, Appellant was required to pay "all real estate taxes and assessments levied or assessed against the ... [Property]." Additionally, pursuant to §6.01 of the Lease, Appellant was required to maintain and repair the Property.

**{¶5}** Appellant failed to pay real estate taxes for the Property to the Knox County Treasurer. Appellant also failed to properly maintain and repair the Property.

**{¶6}** Upon termination of the Griffiths' marriage, the ownership and obligations of Appellee and Appellant businesses was allocated by virtue of the domestic relations proceedings in Cuyahoga County's Domestic Relations Division, Case No. DR-10-33235.

**{¶7}** The domestic relations court first provisionally allocated Centerburg RE, LLC and the operations of Centerburg Pointe to Ms. Griffiths in an order dated October 18, 2011, which confirmed an interim award of the arbitrator in the domestic relations action. The parties agreed, the arbitrator awarded, and the Domestic Relations Court ordered, that:

**{¶8}** "1. Effective December 1, 2010, Marti Griffiths will manage Centerburg RE, ...

**{¶9}** "2. Effective December 1, 2010 Marti Griffiths will form a corporation to replace the operating entities for Centerburg Pointe ... of which Jim Griffiths is the sole shareholder. Jim Griffiths will continue to operate [that entity] through November 30, 2010 and as such will pay the related mortgages due by [that entity] through and including November 30, 2010 ...

**{¶10}** "On or after December 1, 2010, Marti Griffiths may, in her sole discretion, choose to directly, or through an outside operator, operate the facilities at Centerburg Pointe ...

**{¶11}** " ***

**{¶12}** "17. On or before October 27, 2010, the parties shall reconvene in order to address the true-up of payables with respect to the entities operated by each of them ..."

**{¶13}** The Operations Transfer Agreement ("OTA") referenced in Appellee's complaint in this case was entered into by Appellant and Centerburg Pointe Healthcare Group, Inc., the successor operator and tenant of the Centerburg Pointe nursing home, to effectuate the Interim Award's requirement that Appellant turn over the operations of Centerburg Pointe. In accordance with the Interim Award, Appellant ceased operating Centerburg Pointe and the Lease terminated on December 1, 2010.

**{¶14}** In the final divorce decree, the domestic relations court adopted the terms settled upon by Mr. Griffiths and Ms. Griffiths in the SPSA:

**{¶15}** "The Court further finds that the parties have entered into a Separation Agreement and Addendum, which are fair, just and equitable and orders the Agreement and Addendum, which are attached and for identification purposes marked as Exhibit A, be included herein as if fully rewritten and its terms entered into execution." (Decree, 2012 Stipulation Ex. 5, p. 2).

**{¶16}** Specifically, the domestic relations court ordered that Appellee Centerburg RE, LLC, was to be the sole property of, retained by, Ms. Griffiths.

**{¶17}** The Decree further provided that Appellant Centerburg Pointe, Inc., was to be the sole property of, and retained by, Mr. Griffiths. (SPSA, 2012 Stipulation Exhibit 3, at Section 2.3(a) and Section 2.18).

**{¶18}** The Decree's terms, pursuant to the agreement of the Griffiths in the SPSA, included the following:

**{¶19}** In Section 2.3, that Centerburg RE would be Ms. Griffiths sole property and that Ms. Griffiths would hold Mr. Griffiths harmless from any "expenses, losses, claims, or liabilities whatever arising from, or in any way connected with, Centerburg RE [and] Centerburg Pointe ..." (SPSA, Ex. 3 to 2012 Stipulation, sections 2.3(a) and 2.3(d); Decree, Ex. 5 to 2012 Stipulation).

**{¶20}** In Section 2.18, that Centerburg Pointe, Inc. would be the sole property of Mr. Griffiths and that Centerburg RE, LLC would be the sole property of Ms. Griffiths. (Amendment, Ex. 4 to 2012 Stipulation; Decree, Ex. 5 to 2012 Stipulation).

**{¶21}** In Section 2.18, that "[e]xcept as is otherwise provided above in this Agreement, and except as is otherwise provided in the three Operations Transfer Agreements executed by Husband and Wife on November 30, 2010, in which case those other provisions shall govern, Wife shall indemnify, defend and hold Husband and Husband's Entities harmless from any and all debts and obligations (including but not limited to personal guarantees and reasonable attorneys' fees) incurred by or on behalf of Wife's entities." *Id.*

**{¶22}** In Article VII, that "[a]ny and all intercompany loans, infusions of capital or obligations due and owing from Wife (or any entity or property that becomes Wife's separate property pursuant to this Agreement) to Husband (or any entity or property that becomes Husband's separate property pursuant to this Agreement) shall be forgiven and of no further force or effect. Similarly, any and all intercompany loans, infusions of capital or obligations due and owing from Husband (or any entity or property that becomes Husband's separate property pursuant to this Agreement) to Wife (or any entity or property that becomes Wife's separate property pursuant to this Agreement)

shall be forgiven and of no further force or effect." (SPSA, Ex. 3 to Stipulation, pp. 35, 36; Decree, Ex. 5 to 2012 Stipulation).

{¶23} On November 28, 2011, Appellee filed a Complaint in the Common Pleas Court of Knox County, alleging a claim for breach of contract against Appellant. The complaint alleges that Appellant failed to pay property taxes and failed to perform building maintenance with respect to the Centerburg Pointe nursing home owned by Appellee and formerly operated by Appellant. Appellee's complaint alleges specifically that the unpaid taxes and unperformed maintenance related to the period up to December 1, 2010, after which Appellant no longer operated the nursing home pursuant to an interim order ("Interim Award") entered in the Domestic Relations Action.

{¶24} On January 25, 2012, Appellant filed a motion to dismiss Appellee's complaint for lack of subject matter jurisdiction. The Motion to Dismiss asserted that the claims of Appellee were subject to the continuing jurisdiction of the Domestic Relations Court.

{¶25} On February 15, 2012, the trial court denied the Motion to Dismiss.

{¶26} On July 31 and August 1, 2012, the parties submitted cross-motions for summary judgment.

{¶27} On August 13, 2012, the parties filed a stipulation as to certain documents and facts relevant to the issues raised in those motions for summary judgment, the "2012 Stipulation".

{¶28} Appellant's motion argued that Appellee's claims were foreclosed by the release of obligations between Mr. Griffiths, Ms. Griffiths, and their business entities in the Decree.

**{¶29}** Appellee's motion sought summary judgment on liability and damages.

**{¶30}** On November 26, 2012, the trial court entered two judgment entries: one denying Appellant's motion for summary judgment, and the other granting Appellee's motion for summary judgment and entering judgment in favor of Appellee. In that second judgment entry, the trial court entered judgment in favor of Appellee and awarded Appellee the damages it sought for taxes and maintenance.

**{¶31}** On December 5, 2012, Appellee filed a motion for attorneys' fees. After Appellant filed a notice of appeal on December 26, 2012, Appellee filed a motion to dismiss the appeal for lack of a final appealable order. That motion was granted, and the case returned to the trial court for consideration of Appellee's motion for attorneys' fees.

**{¶32}** On June 21, 2013, the parties stipulated that the reasonable amount of attorneys' fees incurred by Appellee was $64,000.

**{¶33}** On August 7, 2013, the trial court issued a final appealable order incorporating the November 26, 2012, judgment entries and awarding Appellee $64,000 in attorneys' fees.

**{¶34}** Appellant filed an appeal and this matter is now before this Court for consideration. Appellant assigns the following errors for our review:

**{¶35}** "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.

**{¶36}** "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶37} "III. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."

**I.**

{¶38} Under its First Assignments of Error, Appellant claims the trial court lacked subject matter jurisdiction in this matter. We disagree.

{¶39} The standard of review for dismissal for want of subject matter jurisdiction pursuant to Civil Rule 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. *Prosen v. Dimora,* 79 Ohio App.3d 120, 606 N.E.2d 1050 (1992); *State ex rel. Bush v. Spurlock,* 42 Ohio St.3d 77, 537 N.E.2d 641 (1989). This determination involves a question of law that we review de novo. *Shockey v. Fouty,* 106 Ohio App.3d 420, 666 N.E.2d 304 (1995). Under a *de novo* analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991).

{¶40} Appellant herein argues that the trial court did not have subject matter jurisdiction in this case because Appellee's claims relate to the marital debt and therefore fall within the jurisdiction of the domestic relations court.

{¶41} In this case, we find that based on the subject matter of the dispute herein, the general division and the domestic relations division had concurrent jurisdiction.

{¶42} Once a court acquires jurisdiction of a cause of action, its authority continues until the matter is "completely and finally disposed of." Thus, a court of concurrent jurisdiction is not at liberty to interfere with the first court's proceedings. *John*

*Weenink & Sons Co. v. Court of Common Pleas of Cuyahoga Cty.* (1948), 150 Ohio St. 349, 82 N.E.2d 730, paragraphs two and three of syllabus.

**{¶43}** The jurisdictional priority rule provides that "as between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." *State ex rel. Racing Guild of Ohio v. Morgan* (1985), 17 Ohio St.3d 54, 56, 476 N.E.2d 1060, quoting *State ex rel. Phillips v. Polcar* (1977), 50 Ohio St.2d 279, 364 N.E.2d 33, syllabus. Hence, "where a suit is commenced in one jurisdiction which involves the 'whole issue' between the parties, a second court may not interfere with the resolution of the issue filed in the first court." *Davis v. Cowan Sys.,* Cuyahoga App. No. 83155, 2004-Ohio-515; *see, also, CWP Ltd. Pshp. v. Vitrano* (May 15, 1997), Cuyahoga App. No. 71314.

**{¶44}** "The determination of whether two cases concern the same 'whole issue' is a two-step analysis. First, there must be cases pending in two different courts of concurrent jurisdiction involving substantially the same parties; and second, the ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where suit was originally commenced." *Id.*

**{¶1}** First, we find that the parties involved in the instant action are different than the parties in the divorce action. Second, we find that a ruling of the General Division will not affect or interfere with the resolution of the Griffiths' divorce action in the Domestic Relations Court

**{¶45}** The basis of the Complaint filed in the general division of the common pleas court alleges a breach of a contractual lease agreement between Appellant Centerburg Pointe, Inc. and Appellee Centerburg RE, LLC.

**{¶46}** Appellee and Appellant are business entities which exist separate and apart from Mr. and Mrs. Griffiths. "A corporation is a separate legal entity from its shareholders, even where there is but one shareholder." *Stuffleben v. Cowden,* 8th Dist. No. 82537, 2003-Ohio-6334, 2003 WL 22805065, ¶ 25, quoting *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 420, 602 N.E.2d 685 (6th Dist.1991); *see also Belvedere,* 67 Ohio St.3d at 287, 617 N.E.2d 1075.

**{¶47}** R.C.§ 3105.011 sets forth the jurisdiction of domestic relations courts. It states:

**{¶48}** "The court of common pleas, including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter."

**{¶49}** In *Tanagho v. Tanagho* (Feb. 23, 1993), 10th Dist. No. 92AP-1190, 1993 Ohio App. LEXIS 1201, 1993 WL 50950, the domestic relations court decided a quiet title action brought against a third-party defendant within the context of a divorce action. On appeal, the Tenth District held that the domestic relations court had exceeded its jurisdiction in deciding the quiet title action. The court reasoned that "in an action for divorce, the common pleas court, or its domestic relations division, is limited in its jurisdiction to the determination of domestic relations matters and any collateral claims

must be brought in a separate action in the appropriate court or division thereof, where the claim involves determination of the rights of a third-party." *Id.* at 6, 855 N.E.2d 136.

{¶50} In *Lisboa v. Karner* (2006), 167 Ohio App.3d 359, 855 N.E.2d 136, 2006-Ohio-3024*,* the relator filed a writ of prohibition to prohibit the domestic relations judge from ruling on a contract fee dispute among third-party creditors, the marital estate and the relator in her underlying divorce action. The Eighth District granted the writ of prohibition and held that "R.C. 3105.011 * * * has been consistently interpreted as excluding collateral claims and non-domestic relations matters from the domestic relations court." *Id.* at ¶ 13, 855 N.E.2d 136.

{¶51} Upon review, we find that the instant case involves the rights of third parties. Further, the subject of the instant case is breach of a lease agreement, which falls within the scope of the general division court's jurisdiction.

{¶52} While it is true that ownership of Appellant and Appellee was allocated to Mr. and Mrs. Griffiths individually by way of the separation agreement and subsequent divorce decree, as the businesses were marital property, Appellant and Appellee were not parties to the divorce action. The issues of determining whether or not these business entities were assets that should be included in the marital estate and the valuation for purposes of property distribution were primarily domestic relations issues. However, a separate breach of contract action between the business entities themselves would not be.

{¶53} Although there is no provision of law which specifically requires all other civil cases to be brought within or assigned to the general division of the common pleas court, it may reasonably be concluded that when a case is not primarily of a domestic

relations nature, it should be originally brought in the general division, or assigned to a judge thereof. *In re Dunn* (1995), 101 Ohio App.3d 1, 5, 654 N.E.2d 1303, 1305.

{¶54} Contract cases are not within the exclusive jurisdiction of the domestic relations division. The general division judge who was assigned to his case, therefore, had jurisdiction to consider Appellee's claims. The general division court was the court whose jurisdiction was first invoked and that "[a]s between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." Citing *State, ex. rel. Racing Guild of Ohio v. Morgan* (1985), 17 Ohio St.3d 54, 476 N.E.2d 1060.

{¶2} Appellant's First Assignment of Error is denied.

## II., III.

{¶3} In its Second and Third Assignments of Error, Appellant claims the trial court erred in denying its motion for summary judgment and granting Appellee's motion for summary judgment. We disagree.

"Summary Judgment Standard"

{¶4} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:

{¶5} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the

action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

{¶6} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶7} It is based upon this standard that we review Appellant's assignments of error.

{¶8} Pursuant to the Operating Transfer Agreement (OTA), signed by Appellant Centerburg Pointe, Inc. and Appellee Centerburg RE, LLC, effective December 1, 2010, Appellant and Appellee were required to terminate the existing Lease in this matter

"provided, however, said termination shall not be deemed a waiver or release of any claims or defenses that may exist under the … Lease."

**{¶9}** Based on the foregoing language, Appellant retained all liabilities and obligations related to the Property prior to the date of the signing of the OTA.

**{¶10}** The Separation Agreement in this matter was signed by Jim Griffiths and Martha Griffiths, and while it does incorporate the OTA, Section 2.18 of the Separation Agreement specifically states:

**{¶11}** "***

**{¶12}** "Except as is otherwise provided above in this Agreement and *except as* is otherwise provided in the three Operations Transfer Agreements executed by Husband and Wife on November 30, 2010, in which case those other provisions shall govern, Husband shall indemnify, defend and hold Wife and Wife's entities harmless from any and all debts and obligations (including but not limited to personal guarantees and reasonable attorneys' fees) incurred by or on behalf of Husband's Entities.

**{¶13}** "***

**{¶14}** "Nothing in this Agreement shall diminish any of the defenses or indemnity obligations owed by any person or entity set forth in the Operations Transfer Agreements dated November 30, 2010 for the ... Centerburg Pointe nursing facilities."

**{¶15}** The relevant provision of the OTA states:

**{¶16}** "Operator hereby agrees, indemnifies and holds New Operator and New Operator's affiliates, and their respective partners, members, shareholders, officers, employees, agents, successors and assigns (each, an "Indemnified Party") harmless (on a joint and several basis from and against any and all losses, damages, claims,

causes of action, judgments, costs and expenses (including reasonable fees of attorneys) that may be suffered or incurred by or asserted or awarded against New Operator or any Indemnified Party, in each case arising out of the following:

**{¶17}** "***

**{¶18}** "(iii) any liability arising out of the operation of the [Centerburg] Facility prior to the Commencement Date."

**{¶19}** Additionally, we find that the obligation in this action, i.e. real estate taxes, was not an obligation due and owing from Husband to Wife as addressed in the Separation Agreement. Rather, said real estate taxes were an obligation owed to the Knox County Treasurer, and pursuant to Section 2.04 of the Lease, "Appellant must pay … all real estate taxes."

**{¶20}** We further find that trial court did not err in finding the tax bill and repair bill attached to both Appellee's Motion for Summary Judgment and Appellee's Complaint, along with Appellant's response's to Appellee's Request for Admissions, supported Appellee's motion for summary judgment and provided sufficient evidence of damages.

**{¶21}** Based on the foregoing, we find the trial court did not err in granting summary judgment in favor of Appellee for breach of the lease agreement and awarding damages for same.

**{¶22}**  Appellant's Second and Third Assignments of Error are denied.

**{¶23}**  For the foregoing reasons, the judgment of the Court of Common Pleas of Knox County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

JWW/d 1020