OPINION
{¶ 1} This appeal arises from a divorce action filed in the Ashtabula County Court of Common Pleas. Appellant, Ronald R. Stacy ("Ronald"), appeals the trial court's judgment regarding the division of real and personal property.
 {¶ 2} The relevant facts are as follows. Ronald and Sherri E. Stacy ("Sherri") were married on March 4, 1978. They had one child born of the marriage. They separated on September 15, 2001, when Sherri moved out of the marital residence. Ronald retained exclusive use of the marital dwelling pending the divorce litigation. On October 31, 2001, Sherri filed a divorce complaint. Ronald filed an answer and counterclaim on November 20, 2001. The matter proceeded as a contested divorce action. The case was heard by the court on three non-consecutive days: January 31, 2003; May 29, 2003; and, March 10, 2004.
 {¶ 3} During trial, testimony was given by both Ronald and Sherri, and Ronald's parents, Dorothy Stacy ("Dorothy") and Leonard Stacy ("Leonard"), with respect to the following matters relevant to this appeal: (1) a vacant ¾ acre parcel of real property located in Jefferson, Ohio ("lot"); (2) a John Deere Model 755 tractor ("tractor"); and (3) the marital residence located at 675 Hickok, Jefferson, Ohio.
 {¶ 4} In its opinion and judgment entry ("opinion"), filed on May 11, 2004, the court found that "the duration of the marriage was from March 4, 1978, until September 15, 2001." The court also found that the lot and tractor were marital assets. The court ordered the sale of the lot with the proceeds to be divided equally between Ronald and Sherri, and the tractor was awarded to Ronald. The court further found that Ronald had made mortgage payments on the marital residence for about thirty-two months commencing in September 2001, when Sherri vacated the marital residence, and continuing through to April 2004. The court ordered that Ronald should be reimbursed for the sum of $5,478.40 for tax and insurance payments during the thirty-two month period, but that he not be reimbursed for the interest and principal portion of the mortgage payments that he paid for that same time period.
 {¶ 5} On September 24, 2004, the court entered a judgment entry finding the parties incompatible and granting them a divorce. The court further ordered the equitable division of property, incorporating its May 11, 2004 opinion. It is from this judgment that Ronald has filed a timely notice of appeal and sets forth the following three assignments of error for our review:
 {¶ 6} "[1.] The trial court erred to the prejudice of the defendant-appellant in determining that the vacant lot in Jefferson to be marital property.
 {¶ 7} "[2.] The trial court erred to the prejudice of defendant-appellant in determining the John Deere Tractor to be marital property.
 {¶ 8} "[3.] The trial court erred to the prejudice of defendant-appellant in determining post separation home mortgage payments made by defendant-appellant to be marital property is contrary to law where the record demonstrates that the payments were not made during the courts determination of the duration of the marriage."
 {¶ 9} Ronald's first and second assignments of error both challenge the court's determination to classify an asset as marital property. Therefore, we shall address them in a consolidated manner.
 {¶ 10} A trial court's determination regarding whether property is marital or separate involves a factual analysis of the weight of the evidence. The trial court's characterization of property as either marital or separate necessarily involves a factual inquiry under a manifest weight of the evidence standard. An appellate court will not reweigh the evidence, but instead will uphold the findings of the trial court when the record contains some competent and credible evidence to support the court's conclusions. Boyles v. Boyles, 11th Dist. No. 2002-P-0097, 2003-Ohio-5351, at ¶ 18. A trial court's factual determinations underlying its classification of property as marital or separate will be upheld if they are supported by competent, credible evidence. Frederick v. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458, at 13.
 {¶ 11} In addition, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony. Hvamb v. Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, at ¶ 18, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77. Accordingly, a reviewing court must defer matters of a witness's credibility to the trier of fact. Babka v.Babka (1992), 83 Ohio App.3d 428.
 {¶ 12} Marital property is defined in R.C. 3105.171(A)(3)(a)(i) as "all real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" Marital property does not include any separate property. R.C. 3105.171(A)(3)(b)
 {¶ 13} R.C. 3105.171(A)(6)(a)(vii) defines the following as separate property: "Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." (Emphasis added.)
 {¶ 14} First, Ronald contends the lot was his separate property. He alleges that the lot was a gift to him from Dorothy. Thus, Ronald had the burden at trial to establish by clear and convincing evidence that the lot was a gift exclusively made to him.
 {¶ 15} The essential elements of an inter vivos gift are as follows: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control of the property. Georgev. Zink (May 23, 1997), 11th Dist. No. 96-L-132, 1997 Ohio App. LEXIS 2234, at 4-5, citing Streeper v. Myers (1937), 132 Ohio St. 322, paragraph one of the syllabus.
 {¶ 16} In the case sub judice, the first element of "donative intent" was contested, and the court permitted testimony from Dorothy regarding that issue.
 {¶ 17} Testimony established that the quitclaim deed was prepared by an attorney hired by Dorothy and transferred the lot jointly to Sherri and Ronald on September 16, 1987. All real estate taxes on the lot were paid from marital funds. Ronald testified that it was his idea to put Sherri's name on the deed because "[w]ell, we were married." Dorothy testified that the gift of the land was intended solely for Ronald, and that it was her desire to keep the lot in the Stacy family. She further testified that the lot was to be returned to her in the event that Ronald and Sherri wanted to sell it. A letter-memorandum, dated September 16, 1987, purportedly written by Dorothy, was submitted into evidence, referencing Dorothy's wishes that the lot was to remain in the family. Ronald purportedly signed the bottom of the letter as a promise to abide by her wishes. Sherri's name was not on the letter, and she testified that she had no knowledge of its existence.
 {¶ 18} However, Dorothy's testimony was contradicted by the undisputed fact that, without objection, Sherri and Ronald had placed the lot for sale, prior to their separation. Sherri testified that only the fact that no offers were received prevented the sale from being made.
 {¶ 19} In its opinion, the court found Dorothy's "donative intent" to gift the lot to both Ronald and Sherri, and stated the following: "[Ronald] requested that [Sherri] be named on the deed. Dorothy * * * selected the legal counsel to prepare the deed and clearly could have requested a deed transferring the * * * lot to [Ronald], her son. In addition, the deed could have contained a provision that the property would revert to her if it was ever sold outside the family. None of these provisions existed in the deed and the court finds that the testimony of Dorothy * * * and [Ronald] is now self-serving in that they are attempting to retain an asset for themselves appraised at $38,000."
 {¶ 20} While the parties offered conflicting testimony as to whether the lot was a gift intended solely for Ronald or to both Ronald and Sherri, we find that the trial court was in the best position to observe the witnesses and weigh and resolve the conflicting testimony. Hvamb,
supra at ¶ 18. Therefore, we find that Ronald failed to establish that the lot was conveyed to him solely and exclusively by clear and convincing evidence.
 {¶ 21} Next, Ronald asserts that the court committed error by finding the tractor to be marital property. Specifically, he alleges that his parents are the actual owners of the tractor. We disagree.
 {¶ 22} Testimony was established at the trial that the tractor was purchased on May 12, 1992. Ronald testified that the reason for the purchase of the tractor was "to take care of our property." A down payment of $1,500 was made by funds from an inheritance that Sherri received. It was undisputed that the $13,200 balance of the contract price was financed in the name of Dorothy. Testimony established that Ronald's credit was not good in 1992 and that the tractor was purchased in Dorothy's name in order to obtain financing. Sherri testified that she made monthly tractor payments in the amount of $272 from a bank account funded by marital money. These payments were made for a period of about five years, until the tractor was paid off. Both Sherri and Ronald testified that Sherri handled all the financial affairs of the marriage. Testimony further established that the tractor was used by them and had always been kept at the marital residence.
 {¶ 23} Conflicting testimony regarding the source of payments for the tractor was given by Dorothy and Ronald. Dorothy testified that she periodically made cash contributions to Ronald for the tractor payments. Ronald testified that he had received cash for the tractor payments, "50, hundred dollars, cash here or there." However, no record or log of any specific sums of cash paid by Dorothy for tractor payments was offered into evidence.
 {¶ 24} In its opinion, the trial court held that the tractor was marital property, "purchased and paid for by the parties from marital funds." The court found Dorothy's testimony to be "totally without corroboration," and "to not be credible." Conversely, the court found Sherri's testimony to be credible.
 {¶ 25} In accordance with, Hvamb, we find again find that the trial court, as the fact finder, was in the best position to believe or disbelieve all or any part of the parties' testimony. We find nothing prejudicial to Ronald in the trial court's finding that the tractor was marital property pursuant to R.C. 3105.171(A)(3)(a)(i). Competent, credible evidence was presented that the tractor was acquired by Sherri and Ronald and paid for by marital funds. The tractor was used by Sherri and Ronald to maintain their property, and the tractor was stored on their marital premises.
 {¶ 26} Based upon the foregoing, Ronald's first and second assignments of error are without merit.
 {¶ 27} In his third assignment of error, Ronald contends that the trial court committed error by failing to award him reimbursement of principal and interest payments that he made on the marital home mortgage debt for the period of September 2001 through May 2004. The court determined that Ronald should be reimbursed solely for the tax and insurance portion of the mortgage payments for this time period. Ronald asserts that the court made a determination that the duration of the marriage was from March 4, 1978 until September 15, 2001, when Sherri vacated the marital dwelling. Thus, he argues that he should be reimbursed for the entire amount of all mortgage payments made by him after September 2001, as his sole and separate property. We disagree.
 {¶ 28} The trial court's decision in dividing marital property will not be reversed absent an abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When dividing marital property, a trial court must consider marital debt. Barkley v. Barkley (1997),119 Ohio App.3d 155, 169.
 {¶ 29} Here, the marital real estate was encumbered by a mortgage, a marital debt. Ronald testified that the mortgage balance was between $56,000 and $58,000. Two appraisals were submitted into evidence establishing the fair market value of the property between $138,000 and $145,000. There was no agreement or court order regarding the obligation of payment of the mortgage debt or any reimbursement for payments made on the mortgage debt pending the litigation of the divorce.
 {¶ 30} A trial court is vested with broad discretion in dividing marital and separate property in order to effect an equitable result.Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609; Bugos v. Bugos (Oct. 15, 1999), 11th Dist No. 98-T-0141, 1999 Ohio App. LEXIS 4875, 6; Seybert v. Seybert, 11th Dist. No. 99-T-0119, 2001 Ohio 8739, 2001 Ohio App. LEXIS 5646, at 6.
 {¶ 31} R.C. 3105.171(C) and (D) requires only that the court start from the premise that marital property should be equally divided between the spouses, with each spouse receiving his or her own separate property. The court may make a distributive award of one spouse's separate property to "facilitate, effectuate, or supplement a division of marital property." R.C. 3105.171(E)(1). Barkley, at 166; Cherry, at paragraph one of syllabus.
 {¶ 32} When a distributive award is made the court "shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D). Subsection (F) lists eight non-exhaustive factors for the court to consider in deciding whether to make a distributive award.
 {¶ 33} In the case sub judice, the trial court considered the division of the marital residence, and allocation of the underlying marital debt of the mortgage, at the end of its property division analysis. We note that the marital residence was the sole asset of any appreciable value in this case.
 {¶ 34} Earlier in its opinion, the court divided other property as follows: "the [court] finds * * * [Sherri] has been awarded the total sum of $14,534 and [Ronald] has been awarded the total sum of $18,537." Next, the court considered other marital debt and concluded "* * * [Sherri] is entitled to be reimbursed the net difference of $750 * * *. Plus [Sherri] is entitled to be reimbursed the sum of $4,000.00, which is the net difference in the difference of personal property, above referenced in this docket entry."
 {¶ 35} In its consideration of the mortgage payments made by Ronald, the court found the following: "* * * [Ronald] made payments of $824.53, for approximately thirty-two months after [Sherri] removed herself from the marital dwelling. Those months commenced September of 2001, and continued through April of 2004. Therefore, a period of thirty-two months was included in this time period. * * * [O]f the mortgage payment, the sum of $171.20 was attributed to taxes and insurance payments on the real estate. The sum of $653.33 was attributed to principal and interest payments on the mortgage. The court finds that [Ronald] should not be reimbursed for the interest and principal payments, since he was able to live in the marital dwelling and had the full use of the premises during the time this divorce action has been pending. Evidence was received that [Sherri] made rental payments of $300.00 to $400.00 per month, but that she was merely renting the use of a bedroom and did not have a full marital dwelling at her disposal. Therefore this [c]ourt concludes that [Ronald] should receive consideration and reimbursement for the taxes and insurance that have been paid in order to protect the marital asset, which will basically be divided by the court 50% to each party. Therefore, the court concludes that [Ronald] should be reimbursed the sum of $5,478.40 for thirty-two months of taxes and insurance. * * * [Sherri] should be reimbursed the sum of $4,750.00, which constitutes excess expenses paid by her, and offset compensation due her, as previously calculated * * *. Therefore offsetting the two, the court finds that [Ronald] should be reimbursed an additional $728.00 from the proceeds of the sale of the real estate."
 {¶ 36} We find that the trial court's detailed analysis included a review of its reasons considered in fashioning an overall equitable property division of all marital property and marital debt. In its decision not to award Ronald reimbursement for the portion of mortgage payments attributable to principal and interest, the court specifically noted the underlying facts of Ronald's exclusive use of the premises during the pending divorce litigation, and that Sherri had to maintain a separate residence. Based upon the foregoing, we find that the trial court properly exercised its discretion to facilitate an equitable division of marital property under R.C. 3105.171(E)(1). Thus, Ronald's third assignment of error is without merit.
 {¶ 37} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
O'Neill, J., Rice, J., concur.