OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, appellant, Vanessa Mitchell, appeals from the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, terminating her marriage to appellee, Jeffrey Mitchell, awarding spousal support, and dividing the marital estate. For the following reasons, we affirm the judgment of the court below awarding spousal support and dividing the marital estate, and vacate the portion of the judgment ordering the contingent distribution of certain non-marital property. *Page 2 
 {¶ 2} Jeffrey and Vanessa were married on May 19, 1979, in Salem, Ohio. One child, Colin, an emancipated adult, (d.o.b. 10/11/1984), was born as issue of the marriage. Jeffrey, a licensed professional engineer, having earned degrees in electronic technology during the course of the marriage, is currently employed as Director of Engineering for Reliability First, a conglomerate engaged in monitoring the electric energy transmission industry, with an approximate income of $160,000 per year. Vanessa, who has a high school education, has been employed since July of 1997 as a part-time circulation clerk for the Portage County District Library, with an approximate income of $10,368 per year.
 {¶ 3} On July 12, 2006, Vanessa filed a complaint for divorce, alleging that the parties were incompatible. Jeffrey filed an Answer and Counterclaim on August 10, 2006. A contested trial was held on February 15 and 16, 2007. Testimony was taken from both Jeffrey and Vanessa. The trial court entered its Judgment Entry Decree of Divorce on February 23, 2007, granting the divorce on the grounds of incompatibility, awarding spousal support in the amount of $3,500 per month for a period of six years, and dividing all marital assets.
 {¶ 4} Vanessa timely appeals, assigning the following as error for our review:
 {¶ 5} "[1.] The trial court abused its discretion by awarding the appellant spousal support in the amount of $3,500 per month for a period of seventy-two (72) months.
 {¶ 6} "[2.] The trial court abused its discretion by failing to award the appellant attorney fees.
 {¶ 7} "[3.] The trial court erred as a matter of law by failing to make a division of the sewer tap-in as a marital debt. *Page 3 
 {¶ 8} "[4.] The trial court erred as a matter of law by determining that the appellant's bank account was a conditional gift from the appellee's father."
 {¶ 9} It is well-established legal principle that, "pursuant to R.C.3105.18(C)(1), the trial court enjoys broad discretion in awarding * * * spousal support to either party." O'Grady v. O'Grady, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504, at ¶ 80 (citations omitted).
 {¶ 10} The trial court is provided with broad discretion in deciding what is equitable under the facts and circumstances of each case, however, such discretion is not unlimited. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348,355. Although a reviewing court, as a general rule, may not substitute its judgment for the trial court, it may reverse a trial court's award of spousal support if it finds, after considering the totality of the circumstances surrounding the award, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131 (citations omitted); Kunkle, 51 Ohio St.3d at 67. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 (citation omitted).
 {¶ 11} In the guidance of this discretion, the Ohio General Assembly enacted R.C. 3105.18(C), which sets forth a list of factors the trial court "shall consider" in determining whether an award of spousal support is "appropriate and reasonable." See Gray v. Gray, 8th Dist. No. 80625, 2002-Ohio-3793, at ¶¶ 16-18 (citations omitted).
 {¶ 12} In determining whether such award is appropriate and reasonable, the court must consider the following fourteen factors, to the extent they are applicable: (1) The "income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed" under R.C. 3105.171; (2) the relative *Page 4 
earning abilities of each party; (3) the age and physical mental and emotional condition of the respective parties; (4) the retirement benefits of each party; (5) the duration of the marriage; (6) the extent to which it would be inappropriate for a party to seek employment outside the home due to that party being the custodian of a minor child of the marriage; (7) the standard of living established by the parties during the marriage; (8) the relative extent of education of the parties; (9) the relative assets and liabilities of each party; (10) each party's contribution to the education, training, or earning ability of the other; (11) the time and expense necessary for the spouse seeking support to acquire the education, training, or job experience necessary to obtain appropriate employment; (12) tax consequences, for each party, of an award of support; (13) the lost income production capacity of either party responsible from that party's marital responsibilities; (14) any other factor the court deems relevant and equitable. R.C.3105.18(C)(1)(a)-(n); Ridgeway v. Ridgeway, 7th Dist. No. 04-HA-570,2005-Ohio-6444, at ¶¶ 15-30.
 {¶ 13} In awarding spousal support in the amount of $3,500 per month for a period of 72 months, the trial court made the following relevant findings:
 {¶ 14} "The court herein finds that Husband is gainfully employed with Reliability First Corporation. Husband received a bonus for the past two years. Based on all the evidence, the court determines that it is probable that he will continue to receive a bonus in the future to the maximum of 15% of his annual income. The court finds that between his base salary * * * plus the history of his bonuses * * * Husband's annual income is approximately $160.000.000. On the other hand, Wife is employed on a part-time basis with the Portage County District Library working approximately 20 hours per week and earns an annual income of approximately $10,368.00. *Page 5 
 {¶ 15} "The Court finds that Husband has a college education which was acquired primarily during the marriage and his income history has been one which demonstrates a considerable annual increase. The court also finds that husband is in good health, and despite the small ailments he described to the Court, he testified that they do not impair his ability to be gainfully employed. The court also heard the testimony of Wife, who likewise testified that she has some minor health issues, but they do not prevent her from being gainfully employed. She also testified that it is her goal to attend college, an accomplishment she was not able to fulfill during the course of the marriage, and that her goal is to obtain a degree in business administration in order to improve her ability to earn a living. Considering, therefore, the length of the marriage of approximately 26 ½ years; the education of the parties; the ability of the husband to earn an excellent income, which appears to be increasing at a much greater rate than Wife's income is capable of increasing based upon her level of her present education and training; the fact that parties have no minor children; the property division between the parties; the standard of living adopted by the parties during the course of the marriage; and all other factors enumerated in O.R.C. 3105.18, and on the basis thereof, it is further ORDERED, ADJUDGED, AND DECREED that Husband shall pay to Wife as spousal support the sum of $3,500.00 per month, plus two percent processing fee, for a period of 72 consecutive months, beginning March 1, 2007, or until Wife shall remarry, the death of either party or Wife's cohabitation with an unrelated male person
 {¶ 16} Vanessa argues that the trial court erred and abused its discretion by failing to properly consider and weigh the factors enumerated in R.C. 3105.18(C). In particular, Vanessa contends the trial court erred and abused its discretion by failing to consider the length of her marriage to Jeffrey, her lack of "opportunity to develop *Page 6 
meaningful employment outside the home," and the "gross disparities in education * * * and earning abilities of the parties," and her ability to maintain a comparable standard of living when awarding spousal support "for a period of only 72 months, instead of for the remainder of [her] life with retirement of either party as grounds for a change in circumstances."
 {¶ 17} Vanessa maintains that such an award is contrary to the Ohio Supreme Court's holding in Kunkle, which states that "in casesinvolving a marriage of long duration, parties of advanced age, and ahomemaker-spouse with little opportunity to develop a career, a trialcourt may, in the proper exercise of its discretion, award alimonyterminable only upon certain contingencies * * *." 51 Ohio St.3d at 68, citing Koepke v. Koepke (1983), 12 Ohio App.3d 80, 81 (emphasis sic).
 {¶ 18} The trial court's judgment entry makes clear that it considered the factors it found relevant under R.C. 3105.18(C), when ordering spousal support to Vanessa for a period of six years, including the length of the marriage; the physical condition of the parties; the relative education, income, and earning abilities of each party; the relative assets and liabilities of each party; and the fact that the parties currently had no minor children which would prevent Vanessa from working or pursuing an education, as she stated was her goal.
 {¶ 19} The weight to be applied to each of these statutory factors is a matter within the trial court's sound discretion. Dedic v. Dedic (Dec. 8, 1977), 8th Dist. No. 37820, 1977 Ohio App. LEXIS 8523, at *6, citingPopovic v. Popovic (1976), 45 Ohio App.2d 57, 63; Fitz v. Fitz (Aug. 7, 1989), 5th Dist. No. CA-7757, 1989 Ohio App. LEXIS 3217, at *7. As is evident from the language of the statute, the length of the marriage, and Vanessa's status as homemaker-spouse, are but two of the factors to be considered and weighed. This is evident from the Supreme Court's language in Kunkle, *Page 7 
which states that, "if, under reasonable circumstances a divorced spouse does not have the resources, ability or potential to become self supporting, then an award of sustenance alimony for life would be proper." 51 Ohio St.3d at 69 (emphasis sic); accord Koepke12 Ohio App.3d at 81 ("awards of alimony for sustenance and support should be made terminable upon a date certain in the vast majority of cases wherein both parties have the potential to be self-supporting") (citation omitted).
 {¶ 20} The record supports the trial court's judgment. While the court recognized the long duration of the marriage and the fact that Vanessa spent time at home raising Colin, the evidence also showed that Vanessa was 46 years old and in good health, had graduated high school in two years; had worked in publishing at the time of the marriage, but quit that job to stay at home, even though she was not pregnant. The record revealed that Vanessa expressed a desire to continue her education and receive a degree in business, but had not yet applied to colleges. Vanessa testified she anticipated applying for college and obtaining a degree, but stated it would take her "four or five years" to complete her education.
 {¶ 21} The evidence further showed that Vanessa has worked on a part-time basis for the last ten years for the library district, and that she had looked for, but had not applied for full-time employment since the divorce was filed. Vanessa testified that she would do so "depending upon the outcome [of the case]."
 {¶ 22} The record further showed that Vanessa was awarded, in addition to the marital residence, which carried no mortgage, a half share of Jeffrey's retirement accounts and pension. In addition, she received significant liquid assets amounting to over $130,000. The presence of significant liquid assets in a distribution of property is a factor which may be considered by the trial court when awarding spousal support. O'Grady, 2004-Ohio-3504, at ¶ 87. *Page 8 
 {¶ 23} Perhaps most importantly, the trial court retained jurisdiction to modify the amount and duration of spousal support should her circumstances change. We conclude, based upon the totality of the circumstances, that the trial court did not abuse its discretion, or violate the Supreme Court's holding in Kunkle, by making its award of spousal support to Vanessa terminable after six years.
 {¶ 24} Vanessa next argues that the trial court's award of spousal support was an abuse of discretion, because it failed to allow her to maintain the same standard of living she enjoyed during the marriage. We find no merit to this argument.
 {¶ 25} This court has held that a party is "not specifically entitled to maintain after the termination of the marriage the same standard of living which she enjoyed during the marriage. Spousal support is only required to be fair and equitable." Id. at ¶ 84. "Each party `should enjoy after the termination of a marriage a standard of livingreasonable and appropriate as adjusted by the various [statutory]factors.'" Id. (citation omitted) (emphasis sic). Since the trial court considered the requisite statutory factors in making its award, it did not abuse its discretion.
 {¶ 26} Vanessa's first assignment of error is without merit.
 {¶ 27} In her second assignment of error, Vanessa argues that the trial court abused its discretion by failing to award her attorney fees. In particular, she argues that the trial court failed to consider the relative income of the parties when it made its determination.
 {¶ 28} R.C. 3105.73(A) provides that "[i]n an action for divorce, * * * a court may award all or part of reasonable attorney's fees if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." (Emphasis added). The *Page 9 
burden is on the party seeking attorney fees to demonstrate that he or she is entitled to them. Hall v. Hall, 11th Dist. No. 2001-G-2404, 2002-Ohio-4953, at ¶ 25 (citation omitted).
 {¶ 29} "It is well-established that an award of attorney fees is within the sound discretion of the trial court." Doody v. Doody, 11th Dist. No. 2006-L-200, 2007-Ohio-2567, at ¶ 59, citing Rand v. Rand
(1985), 18 Ohio St.3d 356, 359. "[A]bsent a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court" with regard to the award of attorney fees. Hall, 2002-Ohio-4953, at ¶ 16, citing Cohen v. Cohen (1983), 8 Ohio App.3d 109, 111.
 {¶ 30} "Upon appeal, the only questions for inquiry are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of the evidence; or, whether there was an abuse of discretion." Swanson v. Swanson (1976),48 Ohio App.2d 85, 90 (citation omitted).
 {¶ 31} With regard to attorney fees, the court's judgment entry stated as follows:
 {¶ 32} "The court * * * heard the testimony of the parties relative to attorney fees. The testimony of the parties clearly indicates that while their case has been pending for final determination, each of the parties paid from their marital funds their respective attorney fees incurred by each of them. Having determined, therefore, from parties' testimony that the attorneys have been fully paid and they have been paid from marital assets, the Court does not find any justifiable reason to award any additional attorney fees or to assess Wife's fees to Husband. It is, therefore, the Order of this Court that each of the parties shall pay from their separate assets as herein divided any fee balance due to their respective attorneys."
 {¶ 33} As is clear from the language of R.C. 3105.73(A), a trial court is allowed to consider "any * * * relevant factors the court deems appropriate" in deciding whether or *Page 10 
not to award attorney fees to a party. Here, the trial court considered the fact that both parties satisfied their respective obligations to their attorneys through the use of marital assets prior to their division. This conclusion is supported by the record. Accordingly, the trial court did not abuse its discretion by declining to award attorney fees to Vanessa.
 {¶ 34} Vanessa's second assignment of error is without merit.
 {¶ 35} In her third assignment of error, Vanessa argues that the trial court erred by failing to divide the "sewer tap-in fee" for the marital residence as a marital debt subject to division among the parties. We disagree.
 {¶ 36} "The trial court * * * has the discretion to equitably divide marital property, including marital debt." Biro v. Biro, 11th Dist. Nos. 2006-L-068 and 2006-L-236, 2007-Ohio-3191, at ¶ 92 (citations omitted). "The first step in dividing the parties' marital debts is to determine whether a debt actually exists or not. This is primarily a question of fact to be determined by the trier of fact." Ketchum v. Ketchum, 7th Dist. No. 2001 CO 60, 2003-Ohio-2559, at ¶ 48 (citation omitted).
 {¶ 37} With regard to the sewer "tap-in" fee, the court made the following factual findings:
 {¶ 38} "The court finds that the parties own real estate, which served as their marital home, located at 1902 State Route 44, Atwater Ohio. Parties agreed that this property has a fair market value of $138,900.00, and is currently unencumbered except that parties' recently received notice that there is a sewer tap-in fee that shall be due at a date in the future in the sum of $10,000.00. Plaintiff and Defendant differed as to whether or not the tap-in fee to be paid for the sanitary sewer hookup will create an increase or decrease in the value of the property or will have no effect on the value of the property. Husband testified that in his opinion, it will increase the fair market value *Page 11 
of the property. On the other hand, Wife testified that it most likely will not affect the value of the property. Without any other evidence, the court cannot conclude that the tap-in fee affects the current fair market value of the property. It is, therefore, the Order of this Court that this real estate has a current fair market value of $138,900. The real estate is hereby awarded to Wife, who expressed a desire to retain the marital home subject to Wife paying to Husband one half of the equity, or the sum of $69,450.00. Husband shall transfer his interest in said real estate on the occasion when he has received his equitable share as stated herein."
 {¶ 39} As is evident from the judgment entry, the trial court only considered the "tap-in" fee within the context of the value of the marital home, rather than as a "marital debt" to be divided. We conclude the trial court did not err by not considering the sewer "tap-in" fee to be marital debt.
 {¶ 40} Although the term "marital debt" is not defined by R.C.3105.171, the term has been described as "any debt incurred during themarriage for the joint benefit of the parties or for a valid marital purpose." Id. at ¶ 47 (citation omitted) (emphasis added). "Debt" is defined as "[liability on a claim; a specific sum of money, due by agreement or otherwise." Black's Law Dictionary (8 Ed.2004) 432. R.C.3105.171(A)(2) defines the term "during the marriage," in relevant part, as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce," which, in the instant case, was February 16, 2003.
 {¶ 41} Although Vanessa introduced evidence, in the form of a letter from the Portage County Water Resources Department, indicating that the marital home would be required to connect to a sanitary sewer system which was to be installed along State Route 44, the letter indicated that the system along that route would not be installed until sometime in 2008. The letter further indicated that the Department "will not charge *Page 12 
tap-in fees for a period of 1 year following completion of the sewer system," and that the amounts given for the respective fees and costs of connection were estimates, rather than a "specific sum," as is required to establish a valid debt.
 {¶ 42} Based upon the foregoing, the trial court did not err by not considering the sewer tap-in fee as a marital debt to be divided.
 {¶ 43} Vanessa's third assignment of error is without merit.
 {¶ 44} In her fourth assignment of error, Vanessa argues that the trial court committed reversible error when it determined that FirstEnergy Credit Union Account # 26502, in the amount of $10,404 was a "conditional gift." The essence of Vanessa's argument is that the trial court erred by concluding Jeffrey's father made a "conditional gift" of the money to her, instead of concluding that he had made a valid inter vivos gift, thus making the account Vanessa's separate property. We disagree.
 {¶ 45} A trial court's "characterization of property as either marital or separate necessarily involves a factual inquiry under a manifest weight of the evidence standard." Stacy v. Stacy, 11th Dist. No. 2004-A-0076, 2005-Ohio-5289, at ¶ 10. "A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence." DiNunzio v. DiNunzio, 11th Dist. No. 2005-L-124, 2006-Ohio-3888, at ¶ 63 (citations omitted). "Whether property is marital or separate is a question committed to the sound discretion of the domestic relations court, and its determinations will not be reversed on appeal absent a finding that the trial court abused its discretion." Maloney v. Maloney, 160 Ohio App.3d 209,2005-Ohio-1368, at ¶ 8 (citation omitted).
 {¶ 46} R.C. 3105.171(A)(6)(a)(vii) defines separate property as "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after *Page 13 
the date of the marriage and that is proven by clear and convincingevidence to have been given to only one spouse." (Emphasis added).
 {¶ 47} With regard to the account in question, along with similar accounts opened by Jeffrey in both his and Colin's names, the court made the following relevant findings of fact, and conclusions of law:
 {¶ 48} "The court * * * received stipulations that currently Wife has in her name a First Energy Credit Union account number 26502 in the present amount of $10,372.00. Husband has in his name a First Energy Credit Union account number 26501 in the amount of $10,404.00. Parties' son has a First Energy Credit Union account number 26503 in the amount of $10,903.
 {¶ 49} "* * *
 {¶ 50} "Husband testified that this money was placed in the respective names with the stipulations that in the event that his father shall have need of this money, the funds would be returned to Husband's father for his benefit. Wife did not disagree with Husband's representations. She testified that she has never spoken to Husband's father concerning the nature of this conditional gift except that she did testify that if Husband's father would ever need this money, the money would be made available to him to the extent that Wife would even provide financial support out of her own assets for Husband's father.
 {¶ 51} "Based on all of the evidence, this Court is of the opinion that these funds were conditional gifts. It is, therefore, the Order of this Court that these accounts derived from Husband's father shall remain in the names of the parties as they currently exist so long as Husband's father shall live. In the event that Husband's father needs financial assistance from these accounts, then the amount requested by Husband's father shall be taken in equal amounts from each of these accounts on each occasion *Page 14 
the financial demands are made. Whatever balance may remain in these accounts upon the demise of Husband's father shall remain the property of the respective owner of the accounts."
 {¶ 52} We disagree with the trial court's conclusion that the money in the accounts was a "conditional gift." With regard to conditional gifts, "[a] donor may limit a gift and render it so conditioned and dependent on an expected state of facts that, when the state of facts fail, the gift fails with it." Wilkin v. Wilkin (1996), 116 Ohio App.3d. 315, 318. "A classic law school example of a conditional gift is the engagement ring given in contemplation of a marriage that [does not] take place."Kelly v. Kelly, 163 Ohio App.3d 260, 2005-Ohio-4740, at ¶ 15. Conditional gifts have also been found in other contexts. SeeWilkin, 116 Ohio App.3d at 318-319 (A father's gift of $4,000 to his daughter "on the condition she would use the money to take a French course in New York City" created an obligation for the daughter to return the gift when that condition failed.).
 {¶ 53} In the instant case, there is no such condition precedent attached to the gift. This does not, however, end our inquiry, since Vanessa argues the court erred by not concluding the money in her account was a valid inter vivos gift.
 {¶ 54} "An inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another."Smith v. Shafer (1993), 89 Ohio App.3d 181, 183 (citation omitted). "The essential elements of an inter vivos gift are as follows: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control of the property." Stacy, 2005-Ohio-5289, at ¶ 15 (citations omitted);
 {¶ 55} "The donee has the burden of showing * * * that the donor made an inter vivos gift." Gearhart v. Gearhart, 5th Dist. No. 2007CA0026,2008-Ohio-23, at ¶ 40 *Page 15 
(citation omitted). Consistent with the requirements of R.C.3105.171(A)(6)(a)(vii), there must be clear and convincing proof of "an intention of the donor * * * to transfer the title and right of possession of the particular property to the donee * * * then and there." Id. (citation omitted). "Clear and convincing evidence is that evidence `which will provide in the mind of the trier of facts a firm belief or conviction of the facts sought to be established.'" Id., citingCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 56} The trial court's judgment entry, though it incorrectly characterized the transfer of property as a "conditional gift," supports the conclusion that the "gift" in question was not a valid gift inter vivos. This is because the court could only reach the conclusion it did by concluding that Vanessa had failed to clearly and convincingly demonstrate an intent by the donor to make an immediate gift ofany of the accounts. The record supports this conclusion, since Vanessa admitted upon cross-examination that "there was some conversation" between Vanessa and Jeffrey "that [the] money was to be given in three names with the condition that if Jeff's dad needed it, it would be returned to him."
 {¶ 57} Under these circumstances, the trial court did not err by concluding the account in question was not Vanessa's separate property.
 {¶ 58} Relying on the Eighth District case, Lisboa v. Karner,167 Ohio App.3d 359, 2006-Ohio-3024, Vanessa next argues that the domestic relations court lacked jurisdiction to make the determination that the money was a "conditional gift," (or, as we have concluded, an invalid gift inter vivos), since such a determination "involved the rights of a third party," i.e. Jeffrey's father, who was not a party to the case. *Page 16 
 {¶ 59} It is a well-settled principle of law that "a party * * * may challenge jurisdiction at any time during the pendency of a case."Bechtol v. Cobb (Aug. 16, 1996), 6th Dist. No. WM-95-027, 1996 Ohio App. LEXIS 3423, at *17 (citations omitted).
 {¶ 60} As Vanessa correctly notes, Lisboa, held, in relevant part, that R.C. 3105.011, "limits the jurisdiction of the domestic relations [court] to the determination of domestic relations matters. Any collateral claims must be brought in a separate action in the appropriate court or division when the claim involves the determination of the rights of a third-party." 2006-Ohio-3024 at ¶ 6, citingTanagho v. Tanagho (Feb. 23, 1993), 10th Dist. No. 92AP-1190, 1993 Ohio App. LEXIS 1201, at *6 and State ex rel. Ross v. O'Grady (Sept. 27, 1994), 10th Dist. No. 94APD03-443, 1994 Ohio App. LEXIS 4383, at *6. However, Vanessa's reading of Lisboa is too broad.
 {¶ 61} R.C. 3105.011, setting forth the jurisdiction of domestic relations courts, provides as follows: "[C]ourts of domestic relations [have] full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter."
 {¶ 62} "If the matter is not primarily a domestic relations matter, then the domestic relations court does not have jurisdiction under R.C. 3105.011." Lisboa, 2006-Ohio-3024, at ¶ 7, quoting Cody Zeigler, Inc. v.Zeigler (Nov. 3, 1998), 5th Dist. No. 98-CA-00054, 1998 Ohio App. LEXIS 5767, at *5 (emphasis added).
 {¶ 63} Although the term "domestic relations matter" is not specifically defined in any of the relevant statues, Tanagho, upon which the court in Lisboa relied, held that the determination of "whether [a] property is a * * * martial asset" [is] "within the jurisdiction of the domestic relations court," despite the fact that a third party also was claiming an interest in the property. 1993 Ohio App. LEXIS 1201, at *7. Put another *Page 17 
way, the issues of determining whether or not an asset should be included in the marital estate, "and if it [is] a marital asset, its valuation for purposes of property distribution" are primarily domestic relations matters, whereas a separate action to quiet title in property filed in the domestic relations court by a third party would not be. Id. at *6-*7 (emphasis added).
 {¶ 64} Here, the trial court's determination that the account in question was, in effect, not a valid gift inter vivos, was a proper determination for the court to make, since the corollary to determining which assets comprise the marital estate must also necessarily include a determination of which assets, if any, do not comprise the marital estate. In effect, the court's order that the "accounts derived from Husband's father shall remain in the names of the parties as they currently exist so long as Husband's father shall live," does not exceed the court's authority, since the court's judgment in this regard merely preserves the status quo with regard to an asset which is not part of the marital estate.
 {¶ 65} Appellant's fourth assignment of error is without merit.
 {¶ 66} That said, we find that the trial court did exceed its jurisdiction in ordering that "[i]n the event that Husband's father needs financial assistance from these accounts, then the amount requested by Husband's father shall be taken in equal amounts from each of these accounts on each occasion the financial demands are made. Whatever balance may remain in these accounts upon the demise of Husband's father shall remain the property of the respective owner of the accounts." This is because a domestic relations court doesnot have jurisdiction over the manner in which an asset clearly not anypart of the marital estate should be distributed.
 {¶ 67} This is a matter that could either be determined by the parties themselves, or by means of a separate action, if necessary, filed in the Court of Common Pleas, *Page 18 
pursuant to Lisboa and Tanagho. In such a case, res judicata would not apply to a subsequent court's decision, since the instant litigation was not "on a point of law or fact at issue in a former action between thesame parties." Zeigler, 1998 Ohio App. LEXIS 5767, at *3-*4, citingState ex rel. Kroger Co. v. Indus. Comm., 80 Ohio St.3d 649, 651,1998-Ohio-174 (emphasis added).
 {¶ 68} For the foregoing reasons, we vacate the portion of the judgment ordering the method of contingent distribution of the proceeds of First Energy Credit Union account numbers 26502, 26501 and 26503, and affirm the remainder of the judgment in all other respects. Costs to be taxed against the parties equally.
 CYNTHIA WESTCOTT RICE, J., COLLEEN MARY OTOOLE, J., concur. *Page 1