OPINION
{¶ 1} Plaintiff-appellant, James Ridgeway, appeals from a Harrison County Common Pleas Court judgment granting him a divorce from defendant-appellee, Vicki Ridgeway.
 {¶ 2} Appellant and appellee were married for 26 years and have two children who are emancipated. On March 19, 2003, appellant filed a complaint for divorce. Appellee filed a counterclaim for divorce. The court issued a temporary spousal support order whereby appellant was to pay appellee $850 per month. The court later changed this amount to $900 per month.
 {¶ 3} After a hearing on the merits, the court issued a judgment entry granting the parties a divorce on May 21, 2004. Among its orders, the trial court awarded a 1998 Blazer to appellant. The court held that weekly payments of $98.39 had been taken directly from appellant's wages and were to continue until the debt on the Blazer was paid. While neither party chose to continue driving the Blazer, the court stated that it would be impractical to have the parties act together to sell it. The court found that by awarding the vehicle to appellant, he would be in control of his own destiny with respect to its sale and the debt which encumbered it. Additionally, the court ordered appellant to pay appellee $693 per month in spousal support for 48 months. Appellant filed a timely notice of appeal on June 17, 2004.
 {¶ 4} Appellant raises five assignments of error. His first, fourth, and fifth assignments deal with spousal support and will be addressed together. They state, respectively:
 {¶ 5} "THE COURT ERRED IN FINDING THAT THE DEFENDANT/APPELLEE WAS TO BE AWARDED SPOUSAL SUPPORT IN THE AMOUNT OF $693.00 FOR 48 MONTHS."
 {¶ 6} "THE COURT SHOULD HAVE GIVEN THE APPELLANT CREDIT FOR THE EXCESSIVE SPOUSAL SUPPORT PAID DURING THE PENDENCY OF THE ACTION."
 {¶ 7} "THE COURT ERRED BY FAILING TO DETERMINE WHETHER THE APPELLEE'S MONTHLY EXPENSES WERE REASONABLE AND ALSO TAKING INTO CONSIDERATION THE LIVING SITUATION OF THE PARTIES."
 {¶ 8} The trial court initially ordered appellant to pay appellee temporary spousal support of $850 per month. Appellee received this amount for May and June 2003, but in July, the court increased the temporary support to $900 per month.
 {¶ 9} Appellee is now employed by Wal-Mart, which provides her with benefits and an hourly wage of $14.70, but her employment is limited to a maximum of 33 hours per week. Appellee also has vocational training but her current wage at Wal-Mart is the highest wage she has earned. Appellant is employed at Ohio CAT as a diesel mechanic with an hourly wage of $20.64. He has completed an 11 month training program and has 27 years of experience with the company.
 {¶ 10} The court analyzed the spousal support factors set out in R.C. 3105.18. It found that appellant had a base income of $43,000 based on a 40 hour workweek, and appellee had a base income of $23,700 based on a 31 hour workweek. However, the court noted that appellee could find nine hours of additional work per week at $7 per hour given her vocational background. Appellee could earn an extra $3,276, increasing her income to $27,000. Therefore, the total base income earned by both parties would be $70,000. This figure is based upon the income available to each party after working 40 hours per week. The court held that each party would be entitled to an equal share of the pooled income resulting in $35,000. Appellant would then have to pay appellee $8,000 per year or $667 a month. However, appellee would have to seek additional employment of $63 per week to realize her share of the pooled income. Accordingly, the court ordered appellant to pay appellee $693 per month for 48 months in spousal support. The court entered the respective earnings into a tax program known as FinPlan to provide a breakdown of its calculations and the tax implications on each party.
 {¶ 11} Under his first assignment of error, appellant argues that the court used an unapproved tax software program for computing the spousal support award instead of relying on the statutory factors. Furthermore, appellant argues that a spouse's financial need can be fully satisfied without equalization of income, and spousal support should not be awarded simply because one spouse has the ability to pay.
 {¶ 12} Turning to his fourth assignment of error, appellant asserts that, for nearly a year after the temporary order, he paid $207 ($900-$693) per month in excess of what the court later deemed to be a fair and reasonable spousal support award under R.C. 3105.18(C). Accordingly, appellant argues that he should be credited for this overpayment in the amount of $2,277.
 {¶ 13} Under his fifth assignment of error, appellant contends that the court did not take into account whether the parties' expenses were reasonable and necessary when computing the spousal support award. He argues the court merely equalized the pooled income using a tax program. Appellant argues that the trial court should have considered appellee's expenses and lifestyle. Appellant further maintains that while appellee shopped at Goodwill and the parties enjoyed a modest lifestyle, appellant was forced to live with his father and barely had enough money to pay for his food and utilities.
 {¶ 14} When reviewing an award of spousal support, an appellate court will not reverse the trial court's award absent an abuse of discretion. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218-219, 450 N.E.2d 1140. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. Id. at 219.
 {¶ 15} R.C. 3105.18(C)(1) sets out the factors a court must consider when determining whether spousal support is appropriate and reasonable and when determining the amount and duration of spousal support. The factors are:
 {¶ 16} "(a) The income of the parties, from all sources, * * *;
 {¶ 17} "(b) The relative earning abilities of the parties;
 {¶ 18} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 19} "(d) The retirement benefits of the parties;
 {¶ 20} "(e) The duration of the marriage;
 {¶ 21} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 22} "(g) The standard of living of the parties established during the marriage;
 {¶ 23} "(h) The relative extent of education of the parties;
 {¶ 24} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 25} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 26} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 27} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 28} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 29} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 30} The trial court considered the applicable R.C.3105.18(C)(1) factors in detail. For instance, under the first factor, the court found a significant disparity in the parties' respective incomes. In considering retirement benefits, the court noted that the parties were equally dividing all the retirement benefits earned during the marriage. Moreover, under the standard of living factor, the court stated, "[t]hroughout the period of the marriage the parties established a modest but comfortable standard of living." Turning to tax consequences, the court found that an award of spousal support would have the effect of shifting income and income tax liability from appellant to appellee who has a lower marginal tax rate. The court performed a similar analysis for every applicable factor set out in R.C.3105.18(C)(1).
 {¶ 31} The court used the factors as guidelines to determine spousal support and then applied each party's income to the tax software to exemplify its calculations and findings. Appellant argues that the purpose of spousal support is to provide for the needs of the ex-spouse, and the equalization of income approach is not necessary to satisfy financial need. However, spousal support awards are no longer based on need but rather on reasonableness and appropriateness. Olenik v. Olenik (Sept. 18, 1998), 7th Dist. No. 94-CA-139.
 {¶ 32} While appellant is correct that equalization of income is not necessary, the trial court's analysis was reasonable because it described, in detail, how it reached its ultimate finding of $693 in spousal support for 48 months. The record demonstrates that if appellee found employment at $7 an hour for nine hours a week, then the pooled income would be $70,000 and this would result in a spousal support award of $8,000 a year, or approximately $667 month. The trial court then made a finding of $693 as opposed to $667. Still, this figure is reasonable and equitable given the totality of circumstances.
 {¶ 33} Turning to the issue of temporary support, it too is a matter within the trial court's broad discretion. Davis v.Davis (1983), 12 Ohio App.3d 38, 40, 465 N.E.2d 917.
 {¶ 34} While the trial court recognized that the temporary spousal support order resulted in a "very serious cash flow problem" for appellant, it justified its temporary award of $900. The court held that the order was appropriate at the time because appellee was working fewer hours at a lower wage, appellant had considerable overtime and premium pay, and the temporary support was ordered to assist appellee in meeting the expenses of independent living. Appellant fails to cite authority that supports the argument that he should be credited for overpayment. Thus, we cannot conclude that the trial court abused its discretion in making the temporary support award.
 {¶ 35} In determining whether the court considered if appellee's monthly expenses were reasonable, appellant argues that while appellee shopped at Goodwill and enjoyed a modest lifestyle, he was forced to live with his father and barely had enough money to pay for his food. However, appellant's argument is not supported by the record. Appellee was asked at the hearing whether her lifestyle was the same as it was previously. She responded that it was not the same because she could not afford her own house and had to live with either her daughter or her mother. (Tr. 147). Appellant also was forced to live with his father. Furthermore, the court found, "[t]here is no significant difference between the relative assets and liabilities of the parties given their respective incomes and earning capacity." Thus, the court considered the parties' financial situations and living expenses in ordering the spousal support award.
 {¶ 36} Accordingly, the trial court did not abuse its discretion in making the final spousal support order of $693 and the temporary support orders of $850 and $900. Thus, appellant's first, fourth, and fifth assignments of error are without merit.
 {¶ 37} Appellant's second assignment of error states:
 {¶ 38} "THE COURT ERRED IN ORDERING SPOUSAL SUPPORT FOR THE BENEFIT OF THE APPELLEE AS SHE ADMITTEDLY COHABITATED WITH ANOTHER MAN DURING THE PENDENCY OF THE ACTION, THEREBY ELIMINATING THE NEED FOR SPOUSAL SUPPORT. IN ADDITION, THE APPELLEE AND THE APPELLANT WERE SEPARATED FOR AN EXTENDED PERIOD OF TIME AND THE APPELLEE ESTABLISHED AN INDEPENDENT LIFESTYLE."
 {¶ 39} After the parties separated in November 2002, appellee moved in with a man from December 2002 to February 2003. Appellee moved into her daughter's house in February 2003, and then she moved to her mother's house in May 2003 where she currently lives. Appellant moved into his father's house after the separation, and he currently resides there.
 {¶ 40} Appellant argues that the uncontroverted testimony at trial was that the parties separated on October 2, 2002 and appellee cohabitated with a paramour during the pendency of the action. Appellant maintains that he was paying the utility bills while appellee was living with a paramour. He contends that since appellee cohabitated with another man and established an independent lifestyle, the court erred in granting her a spousal support award.
 {¶ 41} In this case, it is undisputed that appellee lived with another man during the pendency of the action. However, appellee only lived with another man from December 2002 until February 2003. (Tr. 134-36). In February 2003, appellee moved in with her daughter. (Tr. 136). Appellee testified that while she was living with the other man for three months, appellant did not support her. (Tr. 134). Appellant, however, paid the fuel oil bill, the phone bill, the electric bill, and the mortgage on the marital home during these three months. (Tr. 134).
 {¶ 42} The issue of cohabitation usually relates to the final decree of a divorce proceeding. The decree will state that if the person cohabitates with another unrelated adult, then the spousal support will terminate. Similarly here, the trial court ordered appellant to pay spousal support of $693 per month for forty-eight months until the death of either party, or the remarriage or cohabitation of appellee. The court's temporary spousal support orders did not mention the issue of cohabitation or prohibit appellee from doing so. Furthermore, appellee was not cohabitating with another male at that time. The court did not even order appellant to pay temporary spousal support until May 2003.
 {¶ 43} For the reasons stated above, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 {¶ 44} "THE COURT ERRED IN ITS TEMPORARY ORDERS WHEN IT HELD SPECIFICALLY THAT THE APPELLANT WAS NOT RESPONSIBLE FOR THE PAYMENT OF THE BLAZER; HOWEVER, DIRECT DEPOSIT CONTINUED TO WITHDRAW THE MONEY FROM HIS ACCOUNT IN ADDITION TO THE $900.00 A MONTH SPOUSAL SUPPORT."
 {¶ 45} The parties owned, as marital property, a 1998 Chevy Blazer valued at $7,000. However, the vehicle was subject to a marital debt of approximately $10,449. As payment on this debt, $98.39 has been deducted from appellant's wages each week. By May 2004, the balance on the loan had been reduced by about $2,000.
 {¶ 46} In its temporary order on July 15, 2003 the court found that appellant had been making the $430 payments on the Blazer through May 2003 even though appellee was the one driving the vehicle. The court further noted that appellant had been making the payments without a court order to do so. It made no further mention of the Blazer debt.
 {¶ 47} In its August 22, 2003 judgment entry, the court revisited the issue of the Blazer. It ordered that for the months of August and September 2003, appellant was to receive a $215 credit towards his support payments. This amount was determined because it was half of the monthly payments on the Blazer. The court also ordered that appellee could continue to drive the vehicle until the end of September, at which time she had to turn it over to appellant who should sell it.
 {¶ 48} Appellant argues that the court did not take into account that the payments were being deducted from his checks during the pendency of the action, which meant he had $1,200 withdrawn from his pay. Appellant contends that he should have been given credit for all the payments deducted, not just half of the payments.
 {¶ 49} Appellant chose to make the payments on the Blazer without being ordered to do so by the court. It appears that in the July 15 judgment entry, the court acknowledged that appellant was not required to make payments on the Blazer until appellee stopped driving it. However, appellant continued to make the payments. And following the court's August 22 order, appellee could not drive the Blazer after September 2003.
 {¶ 50} The July 15 judgment entry appears to support appellant's argument that he should get credit for the payments he made on the Blazer while appellee drove it. But the August 22 judgment entry does not. The court's order crediting appellant $215 for two months was equitable in light of the financial situations of the parties. And since the court ultimately awarded the Blazer to appellant, he was simply paying for a vehicle he would come to own without any encumbrances from appellee. As a result, the court did not act in an unreasonable, arbitrary, or unconscionable manner in crediting appellant $215 for two months while appellee drove the Blazer. Accordingly, appellant's third assignment of error is without merit.
 {¶ 51} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs