OPINION *Page 2 
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant/Cross-Appellee, Glenn Faller, appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, that granted a divorce between him and Plaintiff-Appellee/Cross-Appellant, Joanne Faller. Glenn argues that the trial court erred when awarding any spousal support to Joanne since Joanne has a power of attorney over her sister's substantial estate and can make gifts to herself out of that estate. Joanne challenges various aspects of the trial court's division of the marital property and argues that the trial court abused its discretion by not equalizing the parties' incomes through a larger spousal support award. Glenn's sole assignment of error and Joanne's cross assignments of error are all meritless.
 {¶ 2} The trial court acted reasonably in determining that the marriage ended on the final hearing date, which is the presumption pursuant to R.C. 3105.171(A)(2), and the equities of this case do not dictate a deviation from that presumption. Second, the trial court acted reasonably by not including in its marital property division funds that Glenn withdrew from the parties' joint savings account while the divorce was pending, because there is no evidence that Glenn improperly dissipated those funds. Third, the trial court's spousal support award was reasonable. The court's order included safeguards in the event that Joanne begins to use her sister's money for personal use. Finally, the small disparity in the parties' monthly incomes after the trial court's spousal support award is not significant enough to warrant reversal. Accordingly, the judgment of the trial court is affirmed.
 Facts {¶ 3} The Fallers were married on November 1, 1958. Glenn retired in 1995 and Joanne did not work outside the home during the marriage. The two lived on fixed incomes and had two adult daughters.
 {¶ 4} On January 31, 2007, Joanne filed a complaint for divorce. Temporary orders were issued which prevented the parties from dissipating marital assets. On *Page 3 
March 16, 2007, Glenn made a withdrawal from the parties' savings account and it is not clear in the record what was done with that money.
 {¶ 5} Glenn moved out of the marital home on March 21, 2007. He was required to make payments on that home while the divorce was pending and gave some money to Joanne, even though there was no temporary spousal support order in effect.
 {¶ 6} At the time of the divorce, Joanne was acting as attorney-in-fact for her sister, who had substantial assets, and had the ability to gift those assets to herself. Joanne had not taken advantage of this, but would be able to do so at some time in the future.
 {¶ 7} The matter came for a final hearing on July 11, 2007. At that hearing, it was established that Joanne had a net monthly social security benefit of $503.00, while Glenn's monthly benefit was $1,177.00. All other sources of income were equalized.
 {¶ 8} In its judgment, the trial court set the date for the end of the marriage as the date of the final hearing, rather than the day that Glenn moved out of the marital home. It also refused to include the money Glenn withdrew from the savings account as part of the marital estate. The trial court ordered that Glenn pay Joanne $300.00 per month in spousal support. However, it also ordered Joanne to notify Glenn if she received more than $1,000.00 from her sister's funds in any calendar year, and further ordered the parties to exchange income tax returns on an annual basis until spousal support terminates. The trial court retained jurisdiction over the spousal support award.
 Property Division {¶ 9} We will first address Joanne's cross-assignments of error that relate to property division, because the trial court must make its property division determination prior to awarding spousal support, and any change would impact spousal support. R.C. 3105.18(B). The first three challenge a different aspect of the trial court's division of the parties' marital property:
 {¶ 10} "The trial court abused its discretion by choosing an ending date for determination of the parties' marital property that was not in conformance with the evidence presented at trial." *Page 4 
 {¶ 11} "By using the wrong ending date for determination of the parties' marital property resulted in the trial judge dividing the wrong amount of the parties' joint checking account."
 {¶ 12} "The trial judge erred by not including in the parties' marital assets the $825.00 withdrawn by Mr. Faller from the parties' savings account in violation of the court's restraining order."
 {¶ 13} A domestic relations court is required, when granting a divorce, to "determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). A potentially equal division of the marital property should be the starting point of the trial court's analysis. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355,20 O.O.3d 318, 421 N.E.2d 1293. However, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).
 {¶ 14} "[T]he court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'" R.C. 3105.171(G). Further, "in allocating property between the parties to a divorce * * * the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele, 35 Ohio St.3d 93,518 N.E.2d 1197, at paragraph two of the syllabus.
 {¶ 15} "Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion." Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624,791 N.E.2d 434, at ¶ 5. When reviewing a trial court's decision for an abuse of discretion, this court cannot simply substitute its judgment for that of the trial court. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131,541 N.E.2d 597. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Page 5 Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140.
 {¶ 16} Joanne argues in her first cross-assignment of error that the trial court abused its discretion by choosing a marriage ending date for determination of the parties' marital property that was not in conformance with the evidence presented at trial.
 {¶ 17} Parties typically share the property they have accumulated during the marriage until the marriage ends. "The reason for each party having an equal share of the property accumulated during the marriage is based on the presumption that the property was acquired due to the joint labors of the parties. Id. Yet, this presumption may not apply when the parties are living separate and apart and their joint efforts are not being used to acquire property." Clark v. Clark, 7th Dist. No. 03 NO 308, 2004-Ohio-1577, at ¶ 27, citing Berish v. Berish (1982),69 Ohio St.2d 318, 319-20, 23 O.O.3d 296, 432 N.E.2d 183. Accordingly, a marriage ends either on "the date of the final hearing in an action for divorce or in an action for legal separation" or any other date that the trial court "considers equitable in determining marital property." R.C. 3105.171(A)(2). "[E]quitable considerations, not any flat rule, dictate the court's determination of a date prior to trial for the purpose of recognizing and valuing marital assets." Day v. Day (1988),40 Ohio App.3d 155, 157, 532 N.E.2d 201.
 {¶ 18} In this case, the trial court found that the marriage ended on July 11, 2007, the date of the final hearing. Joanne argues that the trial court should have ended the marriage on March 21, 2007, the day that the Fallers began living separately. The trial court found that Joanne presented "minimal" evidence demonstrating that the parties mutually intended to end the marriage that day, and further that Glenn's unilateral decision to leave the marital home did not demonstrate that the marriage was over.
 {¶ 19} In reaching this conclusion, the trial court relied heavily on the Tenth District's decision in Day, supra. In Day, the husband left the marital residence during the course of the proceedings. During that separation, the husband made periodic payments to the wife, but the two never reunited. The trial court set the date of the end of the marriage on the day that the husband moved out of the marital home for no other reason than he had left the residence. *Page 6 
 {¶ 20} The Tenth District reversed. Relying on Berish,69 Ohio St.2d 318, the court held that a "de facto termination must be clear and bilateral, not unilateral." Day, 40 Ohio App.3d at 158. Since the trial court relied solely on the husband's decision to leave the marital residence when deciding the date the marriage ended, the trial court placed "undue emphasis" on the husband's "unilateral actions" and its decision was reversed. Id.
 {¶ 21} Joanne argues that March 21, 2007, should be the date that the marriage ended largely because this was the day that Glenn moved out of the marital home. This fact is, of course, nothing more than the "unilateral action" at issue in Day. However, Joanne attempts to further support her argument here by pointing to the magistrate's temporary orders, which she claims make the parties responsible for their own living expenses. She also notes the fact that much of the marital property was valued as of March 21, 2007.
 {¶ 22} Joanne's reliance on the magistrate's temporary orders is misplaced. While the magistrate did say that each of the parties were ordered to pay their own personal expenses, Glenn was also ordered to pay "the taxes, insurance and utilities for the marital residence," where Joanne lived. Glenn paid Joanne the sum of $782.00 per month while the divorce was pending and paid some of her expenses, such as for Joanne's newspaper subscription. This shows that the parties' joint efforts were still needed to maintain the marital home and the two were not independent of each other on that day.
 {¶ 23} Furthermore, while it is true that Joanne introduced values of various aspects of the marital property as of March 21, 2007, Glenn introduced values from a date closer to the hearing.
 {¶ 24} Given these facts, the trial court did not abuse its discretion when it decided that the date of the final hearing should be the date the marriage ended. The evidence does not strongly demonstrate that Glenn and Joanne had separated their finances to such an extent prior to this date that the trial court's decision was unreasonable. Joanne's first cross-assignment of error is meritless.
 {¶ 25} Joanne argues in her second cross-assignment of error that she should *Page 7 
have received a greater share of a joint checking account, because that account had a greater amount in March 2007, the date the parties separated, than it did at the final hearing date in July, 2007. However, the merit of this argument hinges on a finding that the trial court abused its discretion by designating the final hearing date as the marriage end-date. As explained above, the trial court did not abuse its discretion in that regard. The trial court properly divided the joint checking account by evenly dividing the amount in this account on the day of the final hearing. Thus, Joanne's second cross-assignment of error is meritless.
 {¶ 26} Joanne argues in her third cross-assignment of error that the $825.00 Glenn withdrew from the parties' savings account after the divorce was filed, but before he left the marital home, should have been included in the marital estate and counted against Glenn's portion of that estate. According to Joanne, Glenn's withdrawal of this money violated the magistrate's temporary orders and should have been punished by the court by including the amount of the withdrawal in the marital estate. The trial court refused to do so, finding that there was no evidence that Glenn did anything improper with those funds.
 {¶ 27} The record in this case supports the trial court's finding. Joanne filed her complaint for divorce on January 31, 2007, and a magistrate issued a mutual restraining order that same day. The magistrate's order prevented the parties from, among other things, "[s]elling, disposing of, or dissipating any of their real or personal property, including money (other than regular income), of either party, or removing household goods and furniture from the marital residence." At trial, Glenn admitted he withdrew this money, but stated that he did so because, "I was put in charge of the finances. I was told to pay all the bills."
 {¶ 28} Although Joanne alleged at trial and continues to maintain that it was improper for Glenn to withdraw that money, she has failed to allege or demonstrate that Glenn actually did anything improper with that money after it was withdrawn. If the money was used to pay the marital bills, as Glenn testified, then it did not violate the magistrate's order to withdraw those funds. Thus, there is no merit to Joanne's argument that Glenn *Page 8 
improperly dissipated the funds at issue. Joanne's third cross-assignment of error is meritless.
 Spousal Support {¶ 29} In his sole assignment of error, Glenn argues:
 {¶ 30} "The trial court abused its discretion by ordering the Appellant/Husband to pay spousal support in the sum of $300.00 per month beginning November 1, 2007."
 {¶ 31} Conversely, Joanne argues, in her fourth cross-assignment of error:
 {¶ 32} "The trial judge erred by not equally dividing the revenues of the parties."
 {¶ 33} After a trial court divides the marital property, it must determine whether it will award spousal support. R.C. 3105.18(B). When a trial court determines whether spousal support is appropriate and reasonable, and if so, the amount of that spousal support, a trial court must look to the fourteen statutory factors listed in R.C. 3105.18(C)(1). Those factors are:
 {¶ 34} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 35} "(b) The relative earning abilities of the parties;
 {¶ 36} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 37} "(d) The retirement benefits of the parties;
 {¶ 38} "(e) The duration of the marriage;
 {¶ 39} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 40} "(g) The standard of living of the parties established during the marriage;
 {¶ 41} "(h) The relative extent of education of the parties;
 {¶ 42} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 43} "(j) The contribution of each party to the education, training, or earning *Page 9 
ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 44} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 45} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 46} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 47} "(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18.
 {¶ 48} When reviewing an award of spousal support, an appellate court will not reverse the trial court's award absent an abuse of discretion.Blakemore, 5 Ohio St.3d at 219.
 {¶ 49} Glenn argues that the trial court erred in granting any award of spousal support in this case since Joanne has access to her sister's funds, as her sister's attorney-in-fact, and those funds are more than sufficient to meet all of Joanne's needs. Joanne counters that those funds belong to her sister and should not have been considered by the trial court when determining whether to award spousal support.
 {¶ 50} The trial court agreed with Joanne because she and her daughter credibly testified that none of the funds have been given to Joanne for Joanne's own benefit. However, since the possibility existed that Joanne could use those funds for her own benefit, the trial court ordered: (1) that Joanne notify Glenn of any sums of money she receives in excess of $1,000.00 in a calendar year from her sister, and (2) that the parties exchange income tax returns until spousal support terminates.
 {¶ 51} The record supports the trial court's factual findings. As evidenced by the durable power of attorney admitted into evidence at trial as Plaintiff's Exhibit Two, Joanne has been named attorney-in-fact for her sister and has the ability to gift her sister's money to herself. Thus, Joanne does have access to her sister's money, which is *Page 10 
estimated to be between $400,000.00 and $500,000.00. However, Joanne testified that she understood that this money belongs to her sister, and that she had never used those funds for her own benefit. Joanne's daughter testified that her mother had not taken any of her sister's funds and that the money was being handled for Joanne's sister's benefit. There is nothing in the record indicating that Joanne had ever used her sister's funds for her own benefit or intended to do so in the future.
 {¶ 52} Nevertheless, there remained the possibility that Joanne could use those funds for her own benefit in the future. Glenn argues the trial court failed consider this possibility when it awarded spousal support. However, Glenn is incorrect.
 {¶ 53} As explained above, the trial court ordered Joanne to inform Glenn of any money in excess of $1,000.00 she received from her sister in any calendar year and that the parties were to exchange income tax records. The trial court then retained jurisdiction over spousal support. The clear import of these orders is that the trial court retained the ability to modify its spousal support award if Joanne's sister's money was used for Joanne's benefit. The trial court's orders were reasonably aimed at ensuring Joanne only received spousal support when such an award was reasonable and appropriate and not when Joanne used her sister's money for her own use. Thus, Glenn's sole assignment of error is meritless.
 {¶ 54} Conversely, Joanne believes the trial court should have awarded her an even greater amount of spousal support. After the award, Glenn will have an income of $877.00 per month, while Joanne will have an income of $803.00 per month. Joanne believes the trial court should have ordered that Glenn pay her an additional $37.00 per month so the two have equal incomes.
 {¶ 55} However, there is no requirement that a trial court equalize the incomes of the parties after a divorce. Ridgeway v. Ridgeway, 7th Dist. No. 05-HA-570, 2005-Ohio-6444, at ¶ 32; Okos v. Okos (2000),137 Ohio App.3d 563, 572, 739 N.E.2d 368.
 {¶ 56} Here, the trial court's spousal support award meant that Glenn had an income of only $74.00 a month more than Joanne. Although the trial court did not give its reasoning for the small disparity, we find that this difference is not sufficient to warrant *Page 11 
reversal. See Ridgeway at ¶ 32 (holding that the trial court did not abuse its discretion when awarding $693.00 in spousal support when a $667.00 award would have equalized the parties' incomes). Thus, Joanne's fourth cross-assignment of error is meritless.
 {¶ 57} In conclusion, all of Joanne's challenges to the trial court's division of the marital property are meritless. The trial court acted reasonably in determining that the marriage ended on the final hearing date, which is the presumption pursuant to R.C. 3105.171(A)(2). In addition, the trial court acted reasonably by not including in its marital property division funds that Glenn withdrew from the parties' joint savings account while the divorce was pending, because there is no evidence that Glenn improperly dissipated those funds. Finally, there is no merit to Glenn's argument that the trial court should not have awarded any spousal support at all, or to Joanne's argument that the trial court should have equalized the parties' post-divorce incomes. The trial court's order included safeguards in the event that Joanne begins to use her sister's money for her personal benefit. In addition, the small disparity in the parties' monthly incomes after the trial court's spousal support award is not significant enough to warrant reversal. Accordingly, the judgment of the trial court is affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1